SUSAN CHARLESON, Acting as Guardian Ad Litem for RICHARD LEE TRELEASE and RICHARD ROBERT TRELEASE, Appellants, v. JAMES W. HARDESTY, Respondent.

No. 21940

October 22, 1992                    839 P.2d 1303

[Rehearing denied February 1, 1993]

*Hager & Mausert,* Reno, for Appellants.

*Wait & Shaffer,* Reno, for Respondent.

## OPINION

*Per Curiam:*

In 1982, respondent, James W. Hardesty ("Hardesty"), an attorney, prepared a trust agreement for Adele Kate Trelease. The main beneficiaries of this trust are Ms. Trelease's son and grandson, appellants, Robert Trelease and Richard Lee Trelease ("Treleases").

At the time the trust was formed, Ms. Trelease designated

Abraham Lichowsky ("Lichowsky"), of Southern California, as her successor trustee, even though Hardesty recommended a corporate successor trustee. Hardesty also suggested the requirement of a bond for the trustee, but Ms. Trelease remarked that since she had great faith in Lichowsky's abilities, it was not necessary for a bond to be posted. Thus, when Hardesty drafted the trust instrument, he included a provision allowing the trustee "to make or to receive secured or unsecured loans." On May 29, 1983, Ms. Trelease died, and Lichowsky became trustee. At the time of Ms. Trelease's death, the trust contained $350,000.00 to $400,000.00 in assets.

Although Hardesty claims that he did not advise Lichowsky of his duties as successor trustee, the Treleases claim that Hardesty acted as attorney for the trustee. They point out that early on, Lichowsky asked Hardesty to have a local accountant evaluate some information concerning the trust assets. In addition, Hardesty sent an insurance company a copy of the trust agreement rather than refer the insurance company to Lichowsky. Moreover, the attorneys who represented the Treleases stated that Hardesty appeared to be the attorney for the trust/trustee and that they went to Hardesty for information concerning the trust.[1] Finally, Lichowsky explained that Hardesty helped him with a number of problems that he had as trustee and that anytime he had a question, he would call Hardesty for help. Lichowsky also sent Hardesty a letter stating that Hardesty was the attorney for the trust.

According to the Treleases, Lichowsky, during the eighteen months after he became successor trustee, sold the Nevada trust property and transferred the funds to Southern California. Lichowsky then proceeded to withdraw all of the trust funds for his own use and never rendered an accounting of the trust assets to the Treleases. Although Hardesty had repeatedly told Lichowsky that Lichowsky was required to render an accounting, and Lichowsky had promised to send an accounting, Hardesty never received one.[2] Hardesty, however, never contacted the

---

[1] The Treleases had their own counsel at various times, and these attorneys examined the trust agreement. Specifically, in February 1983, attorney Richard Fleischer was appointed to represent Richard Robert Trelease in criminal proceedings. Mr. Fleischer received copies of the trust agreement. Subsequently, in 1985, Richard Robert Trelease contacted attorney David G. Pumphrey, who examined the trust agreement in March 1985. In 1983, Susan Charleson, Richard Lee Trelease's mother, hired attorney Sheila Smith to file a petition so that she could be appointed guardian ad litem for Richard Lee Trelease. Ms. Smith reviewed the trust agreement in October 1983.

[2] Lichowsky supplied various excuses as to why he had not rendered an accounting. At some point, Lichowsky told Hardesty that he had moved his office to a new building and that his files had been damaged because the roof leaked.

beneficiaries about the lack of an accounting. In addition, at some point, Hardesty became aware that rent due on a mobile home, part of the trust corpus, had fallen into substantial arrearages. Hardesty contacted the mobile home park, apparently on Lichowsky's behalf, and made them an offer to trade the mobile home for the debt. Hardesty, however, never informed the beneficiaries of this development.

In September 1986, more than three years after Lichowsky became trustee, Susan Charleson ("Charleson"), acting as guardian ad litem for Richard Lee Trelease, filed a complaint against Lichowsky for declaratory relief and an accounting. Hardesty notified Lichowsky that Charleson was seeking an accounting and told Lichowsky that he would have to furnish one. At this time, Lichowsky informed Hardesty that most of the trust assets had been removed from Nevada and invested in a Malibu ranch. Hardesty requested information from Lichowsky regarding the ranch property, but Lichowsky never sent him any information about the ranch. Nevertheless, Hardesty filed, for Lichowsky, an answer to Charleson's complaint, in which it was asserted that Charleson's allegation that Lichowsky had not rendered an accounting was false.[3]

After filing the answer, Hardesty received some information from Lichowsky regarding the trust assets. This information, however, represented the trust account balances in *1983,* not 1986. Even so, Hardesty, on behalf of Lichowsky, offered Charleson $1,200.00 per month if she would stop all further discovery, and Charleson agreed.[4]

After Charleson's complaint was settled, Hardesty learned that Lichowsky had been writing bad checks. Lichowsky first denied writing bad checks and then stated that the bank had made a mistake. Further, according to Lichowsky, he had told Hardesty that he had written checks to himself from the trust. Hardesty told Lichowsky that this was not a good idea but that the trust agreement might allow it.

In 1988 or 1989, Lichowsky filed for bankruptcy, and, as mentioned above, no assets remain in the trust account. On June 22, 1989, Richard Robert Trelease and Susan Charleson, as guardian ad litem for Richard Lee Trelease, filed a complaint

---

[3]Hardesty claims that Lichowsky told him that he had sent the accounting to Charleson. As mentioned, however, Hardesty had *never* received an accounting from Lichowsky and did not have an accounting when he filed the answer to Lichowsky's complaint.

[4]As the trust is a spendthrift trust, Charleson's counsel realized that Charleson could not receive any trust funds unless Lichowsky, in his discretion, decided to give them to her. Therefore, he recommended that she accept the offer extended by Lichowsky, through Hardesty.

against Hardesty. In this complaint, they alleged that Hardesty negligently drafted the trust instrument so as to allow Lichowsky to make unsecured loans (without posting a bond) and that Hardesty negligently failed to furnish Ms. Trelease with proper legal advice so that her funds would be preserved. In addition, the Treleases asserted that Hardesty undertook to represent Lichowsky and negligently failed to advise him of his fiduciary duties as trustee. They also claimed that Hardesty owed them fiduciary and professional duties and that he had breached these duties.

After filing an answer, which denied the complaint's averments, Hardesty filed a motion for summary judgment. In his motion, Hardesty asserted that he was hired by Lichowsky on only a limited basis, had no continuing attorney-client relationship with Lichowsky, and therefore had no duty to supervise Lichowsky's conduct. The Treleases then filed an opposition to Hardesty's summary judgment motion and filed their own motion for partial summary judgment. In their motion, the Treleases contended that Hardesty had misstated the facts, that Hardesty was the attorney for Lichowsky in his capacity as trustee, and that Hardesty was aware of Lichowsky's breaches of trust.

Thereafter, the district court entered an order granting summary judgment to Hardesty. The court found that the applicable statute of limitations had passed with regard to the Treleases' claim of negligent drafting, that Hardesty had no duty to supervise Lichowsky, and that Hardesty owed no duty to the Treleases with respect to his representation of Lichowsky.

On appeal, the Treleases assert that the district court erred in granting summary judgment to Hardesty, and we agree. This court reviews summary judgment orders de novo, Tore, Ltd. v. Church, 105 Nev. 183, 185, 772 P.2d 1281, 1282 (1989), and has often reiterated the requirements for a grant of summary judgment:

> "Summary judgment is appropriate only when the moving party is entitled to judgment as a matter of law, and no genuine issue of material fact remains for trial;" properly supported factual allegations of the party opposing summary judgment must be accepted as true. Additionally, the pleadings and documentary evidence must be construed in the light which is most favorable to the party against whom the motion for summary judgment is directed. Litigants are not to be deprived of a trial if there is the slightest doubt as to the operative facts.

Perez v. Las Vegas Medical Center, 107 Nev. 1, 4, 805 P.2d 589, 590 (1991) (citations omitted). Although, if both parties file

motions for summary judgment, the district court *"may* be at liberty in most circumstances to determine that the parties have thereby conceded no material issues of fact remain[,] . . . the mere filing of cross motions for summary judgment [does not] automatically relieve[] the trial court of its obligation of determining whether there actually remains any genuine issue of fact for trial." Cheqer, Inc. v. Painters and Decorators, 98 Nev. 609, 612, 655 P.2d 996, 998 (1982). Here, even though both parties filed motions for summary judgment, the Treleases raised a question of material fact concerning Hardesty's representation of Lichowsky in his capacity as trustee. Because this question of material fact exists, summary judgment was not proper.

### Hardesty's Duty Toward the Beneficiaries

The Treleases contend that, as attorney for the trustee, Hardesty owed them a duty to protect their interests. In Schick v. Bach, 238 Cal. Rptr. 902, 908 (Cal.Ct.App. 1987), the court held that "when an attorney represents a trustee, the attorney also assumes a duty of care toward the beneficiaries." Further, "[i]t is clear that the attorney for a trustee may be held liable to the beneficiary of the trust when he [or she] actively participates in a breach of trust." Morales v. Field, 160 Cal. Rptr. 239, 243 (Cal.Ct.App. 1980) (citing 4 Scott on Trusts § 326.4, at 2568 (1967)). In the present case, the evidence does not suggest that Hardesty actively participated in a breach of trust.

The *Morales* court also noted that "[w]hether an attorney owes . . . a duty [to a third person not in privity] is a question of law and depends on a judicial weighing of the policy considerations for and against the imposition of liability under the circumstances." *Id.* at 315, 160 P.2d at 243 (citing Goodman v. Kennedy, 556 P.2d 737 (1976)). Additionally, the court reasoned that

> [i]n all matters connected with [the] trust a trustee is bound to act in the highest good faith toward all beneficiaries, and may not obtain any advantage over the latter by the slightest misrepresentation, concealment, threat, or adverse pressure of any kind. An attorney who acts as counsel for a trustee provides advice and guidance as to how that trustee may and must act to fulfill [her or] his obligations to all beneficiaries. It follows that when an attorney undertakes a relationship as advisor to a trustee, [she or] he in reality also assumes a relationship with the beneficiary akin to that between trustee and beneficiary.

*Id.* at 244 (citation omitted).

We agree with the California courts that when an attorney

represents a trustee in his or her capacity as trustee, that attorney assumes a duty of care and fiduciary duties toward the beneficiaries as a matter of law. In the present case, *if* Hardesty was the attorney for the trustee, we conclude that he owed the Treleases a duty of care and fiduciary duties. Further, we conclude that under the circumstances of this case, the Treleases have raised a question of fact with regard to a possible breach of Hardesty's duties.

## Negligent Drafting

The Treleases also assert that their claims against Hardesty for negligent drafting of the trust agreement are not barred by the applicable statute of limitations. We disagree.

NRS 11.207(1) states that

> [n]o action against any . . . attorney . . . to recover damages for malpractice, whether based on a breach of duty or contract, may be commenced more than 4 years after the plaintiff sustains damage and discovers or through the use of reasonable diligence should have discovered the material facts which constitute the cause of action.

In K.J.B., Inc. v. Drakulich, 107 Nev. 367, 369-70, 811 P.2d 1305, 1306 (1991), this court held that "[p]ursuant to NRS 11.207(1), the statute of limitations will not commence to run against an attorney malpractice cause of action until the claimant sustains damages." We have also held that the statute of limitations for attorney negligence does not begin to run " 'until the client discovers, or should discover, facts establishing the elements of his or her cause of action.' " Sorenson v. Pavlikowski, 94 Nev. 440, 581 P.2d 851 (1978) (quoting Neel v. Maganam Olney, Levy, Cathcart & Gelfand, 491 P.2d 421 (Cal. 1971)); *see also* Peterson v. Bruen, 106 Nev. 271, 792 P.2d 18 (1990). Thus, in the present case, the statute of limitations did not commence until the Treleases sustained damages and discovered or should have discovered their cause of action.

The Treleases contend that by the end of 1984, virtually no trust funds remained. Thus, the Treleases were damaged by Lichowsky's withdrawals by the end of 1984. Because they did not file the present action until June 22, 1989, more than four years after the harm occurred, the dispositive issue is when the Treleases discovered or should have discovered their cause of action.

The elements of a professional negligence action are the following: "(1) the duty of the professional to use such skill, prudence, and diligence as other members of [the] profession commonly possess and exercise; (2) the breach of that duty; (3) a

proximate causal connection between the negligent conduct and the resulting injury[;] and (4) actual loss or damage resulting from the professional's negligence." *Sorenson,* 94 Nev. at 443, 581, P.2d at 853.

In Began v. Dixon, 547 A.2d 620, 623 (Del.Super.Ct. 1988), the court concluded that dissatisfaction with a drafted document is not "inherently unknowable." In Jaramillo v. Hood, 601 P.2d 67 (N.M. 1979), a beneficiary under a will sued the attorney who drafted the will for negligent drafting and negligent execution. The court held that although the beneficiary's harm arose when the testatrix died, the beneficiary's cause of action did not accrue until the harm was ascertainable. Nevertheless, the court entered summary judgment for the attorney, concluding that the beneficiary's harm was ascertainable when the beneficiary obtained counsel to examine the will. Although *Jaramillo* involved a will instead of a trust, we conclude that the provision for usecured borrowing involved in this case was readily apparent to counsel who examined the trust instrument.[5] Thus, in our view, the Treleases knew or should have known of any possible breach of Hardesty's duty to use the skill, prudence, and diligence exercised by other attorneys when their attorneys examined the trust document.[6]

For the reasons stated above, we concluded that the Treleases have raised a question of fact with regard to Hardesty's representation of Lichowsky as trustee. In addition, we conclude that Hardesty owed a duty of care and fiduciary duties to the Treleases *if* he was the attorney for the trustee. Further, the Treleases have raised a question of fact with regard to a possible breach of these duties. We therefore reverse the district court's summary judgment order and remand this case to the Second Judicial District Court for further proceedings consistent with this opinion.

---

[5]The uncontroverted evidence demonstrates that Ms. Trelease wanted Lichowsky to have discretion over the trust assets and specifically did not want a provision requiring secured borrowing. Thus, it appears that the Treleases' claim of negligent drafting, even if not barred by the statute of limitations, would necessarily fail.

[6]As discussed above, Richard Robert Trelease had two attorneys. One of them examined the trust agreement in 1983; the other examined the trust agreement in 1985. Richard Lee Trelease was represented, through his mother, by an attorney who examined the trust agreement in 1983.