Steffen, C. J.,
with whom Springer, J., joins,
dissenting:
I disagree with both the reasoning and the result of the majority opinion, and therefore dissent.
Although I will hereafter analyze the majority’s ascription of a “trend” in favor of today’s ruling, it is of value to first note the pertinent language of Nevada’s statute of limitations concerning malpractice actions against attorneys:
No action against any . . . attorney ... to recover damages for malpractice, whether based on a breach of duty or contract, may be commenced more than 4 years after the plaintiff sustains damage and discovers or through the use of reasonable diligence should have discovered the material facts which constitute the cause of action.
NRS 11.207(1) (emphasis supplied). It is worthy of note that two prerequisites to the running of the statute exist: (1) the plaintiff must have sustained damage; and (2) the plaintiff must have discovered or should have discovered under a standard of reasonable diligence, the material facts supportive of a cause of action. The majority has quite understandably avoided quoting the referenced statute, for the rule the majority adopts is not compatible with a statute that requires that damages be sustained before the statute commences to run.
The majority has embraced a rule of extreme speculation and *1356 uncertainty that promotes litigious quagmires at the expense of orderly litigation based upon reasonable certainty concerning both the nature and extent of the damages actually sustained by the plaintiff. For example, in the instant case, if appellants had commenced an action for attorney malpractice against their attorney at or near the time of the litigation of the underlying action stemming from the malpractice, there would have been no way, through expert testimony or otherwise, to determine either the extent or basis of plaintiffs’ damages. Although the majority posits that plaintiffs at least knew they would be damaged to the extent of attorney’s fees, even that proposition is entirely speculative because plaintiffs’ fees might have been covered by an award of attorney’s fees. Moreover, if plaintiffs had entered into a contingent fee contract with the attorney representing them in the malpractice action, and had failed to prevail, 'there would have been no attorney’s fees but plaintiffs would have sustained the loss of their respective interests in the promissory note. Finally, any trial lawyer knows that it is not possible to prospectively fix with reasonable certainty the amount of attorney’s fees that may ultimately be charged from the outset of the litigation. The action could be settled, a counterclaim could be filed that could substantially increase the amount of attorney’s fees, including the time involved in the trial of the action.
The majority’s rule is especially troubling in instances where the attorney trying the malpractice action does so on a contingent fee basis. If plaintiffs prevail, they inevitably do so without being made anywhere near whole as to their damages. Since the outcome of the malpractice action will almost always be in doubt as to both liability and damages, let alone attorney’s fees, any rule that would force plaintiffs to commence their action for attorney malpractice before the nature and extent of their damages can be fixed within the bounds of reasonable probability is neither fair nor logical. It also disfavors judicial economy by requiring litigation that may prove to be unnecessary.
Another untoward aspect of the majority’s ruling applies to the situation where the errant attorney handles the underlying action spawned by his or her malpractice in an effort to minimize or avoid damage to the clients. If the clients are then forced to commence an action against their own attorney in the underlying action, relationships become more strained, and the eventual damages more speculative. For example, the errant attorney may very well seek to remedy the consequences of his or her malpractice without charging any attorney’s fees to the clients. If he or she is successful in eliminating the effects of the malpractice without charging the clients, then the concomitant action for malpractice will have proved unnecessary and a source of attorney’s fees that could have been avoided. Indeed, if we were to *1357 assume in the instant case that the attorney who erred in drafting the promissory note had undertaken the defense of the action by the stepmother, and had prevailed without charging his clients for defending the action, the clients would have incurred minimal damage, and a concomitant action filed against the errant attorney would have produced unnecessary attorney’s fees, an unnecessary strain on the relationship between the erring attorney and his clients, and a waste of scarce judicial resources.
The foregoing consequences resulting from the majority’s ruling constitute inexhaustive reasons why the majority has incorrectly concluded that it has fashioned a rule that is part of a trend in the area of attorney malpractice. The opposite is true. Moreover, as I will demonstrate, the majority has also erroneously included both Nevada and Kansas as states that have assertedly followed the rule adopted by the majority.
In Nevada, a cause of action for attorney malpractice exists upon proof of the following elements:
(1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) the breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury, and (4) actual loss or damage resulting from the professional’s negligence.
Sorenson v. Pavlikowski, 94 Nev. 440, 443, 581 P.2d 851, 853 (1978) (citing Prosser Law of Torts, § 30 at 143 (4th ed. 1971); Budd v. Nixen, 491 P.2d 433 (Cal. 1971)). The fourth element of the cause of action for attorney malpractice in Nevada is emasculated by the majority’s effective substitution of the word “prospective or potential” for the word “actual” that modifies the loss or damage resulting from the attorney’s negligence.
This court’s opinion in K.J.B., Inc. v. Drakulich, 107 Nev. 367, 811 P.2d 1305 (1991), cited by both appellants and respondents as support for their respective positions is more instructive on the issue before us than the majority has recognized. The K.J.B. court concluded that a cause of action for attorney malpractice in an underlying lawsuit would accrue, and the statute of limitations would commence to run, only upon conclusion of the action. We expressed the reason for our conclusion thusly: “Where there has been no final adjudication of the client’s case in which the malpractice allegedly occurred, the element of injury or damage remains speculative and remote, thereby making premature the cause of action for professional negligence.” Id. at 369, 811 P.2d at 1306 (citing Semenza v. Nevada Med. Liability Ins. Co., 104 Nev. 666, 668, 765 P.2d 184, 186 (1988), quoting Amfac Distribution Corp. v. Miller, 138 Ariz. 155, 673 P.2d 795, 796 (Ariz. Ct. App. 1983)).
*1358 The majority discounts K.J.B. on the basis that its ruling does not apply where, as here, the alleged malpractice is “separate from the underlying litigation.” The majority understandably provides no reasoning in support of its conclusion. The policy behind our ruling in K.J.B. is simple: a cause of action for attorney malpractice is premature where the indispensable element of injury or damage “remains speculative and remote.” The rule adopted by the majority accords critical respect to speculation and remoteness, despite this court’s recognition of the element of actual loss or damage resulting from the attorney’s negligence as a prerequisite to a cause of action.
In K.J.B. we recognized that the statute of limitations “will not commence to run against an attorney malpractice cause of action until the claimant sustains damages.” Id. at 369-370, 811 P.2d at 1306. We also noted that in Semenza we held “that damages for attorney malpractice are premature and speculative until the conclusion of the underlying lawsuit in which the professional negligence allegedly occurred.” Id. at 370, 811 P.2d at 1306.1 suggest that there is no reason to diiferentiate between attorney malpractice actions that occur during the course of a trial and those that represent transactional or other negligence occurring outside of a trial setting for purposes of determining when the period of limitations begins to run. In either case, the rationale underlying our ruling in K.J.B. applies, i.e., that a cause of action for attorney malpractice is premature until the client actually sustains damage or injury, thus eliminating the need to speculate about the nature and extent of the client’s damages. If the attorney who is negligent in drafting a will also successfully represents the client in attempting to avoid the consequences of the negligence, and does so without charging the client for fees and expenses, then the need for a malpractice action may be obviated altogether. Moreover, the same could apply if the errant attorney unwisely charged fees that are recovered by an award of attorney’s fees by the court.
Spurning the applicability of K.J.B., the majority cites to Charleson v. Hardesty, 108 Nev. 878, 839 P.2d 1303 (1992), as being more instructive in resolving the instant case. I disagree. In Charleson, we reaffirmed the principle that a cause of action for attorney malpractice does not accrue until the client is aware of the facts establishing the elements of the tort.
Unfortunately, our ruling in Charleson is seriously flawed. After recognizing that “the statute of limitations for attorney negligence does not begin to run until the client discovers, or should discover, facts establishing the elements of his or her cause of action,” id. at 883, 839 P.2d at 1307 (citations and quotes within quotes omitted), we concluded that the Treleases *1359 knew or should have known of drafting deficiencies within the trust instrument when another attorney examined the trust agreement in 1983. Despite the 1983 examination, however, this court failed to make any determination concerning when the Treleases knew or should have known that the trustee, Lichowsky, misappropriated the trust assets. Indeed, the opinion appears to reflect ignorance on the part of the beneficiaries of the trust until an action was filed for an accounting in 1986. Prior to 1986, only Lichowsky knew the true status of the trust assets, and as far as the beneficiaries were concerned, the trust assets may not have diminished at all at the time of the filing of their suit in 1986. Thus, knowledge of damage or injury was lacking prior to 1986, and this court erred in failing to consider the damage element of the cause of action in determining that the statute of limitations had run on the negligent drafting claim.
Moreover, Charleson’s recognition that the fourth element in the cause of action for attorney malpractice was “actual loss or damage resulting from the professional’s negligence,” id. at 884, 839 P.2d at 1307 (citation omitted), makes it clear that the cause of action did not accrue until the trust beneficiaries knew or should have known of their actual losses due to the defalcations of the trustee. The provision in the trust agreement permitting the trustee to engage in unsecured borrowing constituted no basis for assuming, ipso facto, that the trust assets had been misappropriated by Lichowsky. In Charleson we noted that “the statute of limitations did not commence until the Treleases sustained damages and discovered or should have discovered their cause of action.” Id. at 883, 839 P.2d at 1307. Knowledge or chargeable knowledge of actual damage is an element of the cause of action that was missing in Charleson; therefore, the statute of limitations concerning the negligent drafting claim should not have commenced prior to 1986. We therefore should have concluded that the 1989 action against Hardesty was timely filed.[1]
Although case precedent in Oregon and Idaho[2] does support the majority’s position, Kansas law does not. The majority cites to the Kansas case of Dearborn Animal Clinic, P.A. v. Wilson, 806 P.2d 997 (Kan. 1991), as support for the rule adopted by today’s *1360 opinion. However, Wilson does not support the majority’s view. The Wilson court merely held that all elements of the attorney malpractice cause of action must be known (discovered) before the cause of action accrues. The Wilson court made no finding whatsoever as to the extent of damages necessary for a cause of action to accrue. Moreover, the court in Wilson significantly noted that “[i]n a legal malpractice action in which there is underlying litigation which may be determinative of the alleged negligence of the attorney, the better rule ... is that the statute of limitations does not begin to run until the underlying litigation is finally determined.” Id. at 1006.
The Kansas case of Pancake House, Inc. v. Redmond, 716 P.2d 575 (Kan. 1986), is both more to the point and in clear opposition to the majority’s position in the instant case. In Redmond, the gravamen of plaintiff’s complaint was that Redmond, who had represented the plaintiff corporation for many years, chose to represent certain individual shareholders of the corporation against the corporate client. The corporation (Pancake House, Inc. or PHI) sued Redmond for legal malpractice in filing the action against PHI on grounds that the action was without probable cause, was malicious, and was a breach of fiduciary duty. The district court granted Redmond a judgment on the pleadings based upon the statute of limitations. In reversing the district court on the tort claims against Redmond, the Supreme Court of Kansas held that “[w]e agree that PHI did not suffer any damages until it had to defend against the suit filed by its former attorneys. It was not until the journal entry of judgment was filed on September 7, 1982, that it suffered sufficient damages for the tort to accrue.” Id. at 579.
Under the majority’s reasoning in the instant case, the Redmond case would have been affirmed on grounds that when the underlying suit commenced, the plaintiff knew that “there would be damages of some kind,” including some amount of attorney’s fees. Fortunately, the Kansas Supreme Court did not buy into this “damages of some kind” or some speculative extent argument adopted by the majority.
The majority also claims, erroneously, that “the trend in our neighboring jurisdictions” supports its holding. Recent decisions in both California and Arizona reflect a rejection of the speculative rule adopted by the majority. In ITT Small Business Finance Corp. v. Niles, 885 P.2d 965 (Cal. 1994), the Supreme Court of California, In Banc, held that fees and costs incurred at the beginning of litigation do not constitute “actual injury” sufficient for a cause of action to accrue.[3] Specifically, Chief Justice Lucas wrote as follows:
*1361 Niles [the defendant attorney] contends that the better rule in transactional malpractice cases is stated in several Court of Appeal cases concluding that “actual injury” under section 340.6(a)(1) occurs when the former client as plaintiff incurs attorney fees either in defending the adequacy of the documentation in the third party action or in defending its reliance on the allegedly negligent attorney in that action. Once attorney fees have been incurred, asserts Niles, the former client has discovered the fact of damage that triggers the running of the limitations period of section 340.6. Niles relies on several appellate cases to support his contention .... As the Court of Appeal below observed, however, these cases were either wrongly decided, can be distinguished from the present case or are consistent with it.
Consistent with our reasoning ... in which we held that a cause of action for legal malpractice accrues under section 340.6(a) when the former client “discovers” the malpractice and is “actually harmed” by it, we conclude that in transactional legal malpractice cases, when the adequacy of the documentation is the subject of dispute, an action for attorney malpractice accrues on entry of adverse judgment, settlement, or dismissal of the underlying action. It is at this point that the former client has discovered the fact of damage and suffered “actual injury”.due to the malpractice under section 340.6. Therefore, in the present case, the statute of limitations of section 340.6 was tolled until the action contesting the documentation was concluded.
Id. at 968, 972 (citations omitted). It is thus seen that California would reach the opposite result under the circumstances of the instant case.[4]
*1362 In our neighboring state of Arizona, the Supreme Court of Arizona, In Banc, in the case of Amfac Distribution Corp. v. Miller, 673 P.2d 795 (Ariz. Ct. App. 1983), aff’d 673 P.2d 792 (Ariz. 1983), agreed with the Court of Appeals that when legal malpractice occurs during the course of litigation, the cause of action accrues “when the plaintiff knew or should reasonably have known of the malpractice and when the plaintiff’s damages are certain and not contingent upon the outcome of an appeal.” Id. at 793 (quoting from cited Court of Appeals decision in same case). The decision in Amfac thus parallels our decision in K.J.B.
More recently, in Lansford v. Harris, 850 P.2d 126 (Ariz. Ct. App. 1992), the Court of Appeals relied upon Amfac in deciding that the incurrence of attorney’s fees in a bankruptcy appeal “did not constitute sufficient damage to start the limitations period.” Id. at 131. The Lansford court also held that “[a] malpractice claim does not exist on negligence alone — there must also be actual injury or damages sustained. Damages cannot be determined until all appeals have been exhausted when a ‘litigation’ rather than a ‘transactional’ malpractice case is involved.” Id. Although the instant case was based upon transactional malpractice, the extent of Gonzalez’s damages, if any, could not be determined until the underlying action was resolved. As noted in Lansford, the prospect of having to pay some attorney’s fees in the underlying action (which, in the case underlying the instant case, amounted only to potential damages), should simply provide no basis for triggering the running of the statute of limitations.
Without citation to further cases, I suggest that the majority’s claim to be part of a “trend” is incorrect. The citation to Oregon and Idaho as evidence of the trend is hardly supportive of the majority’s position. Moreover, I suggest that it is inconsistent with well recognized principles of law relating to damages to adopt a rule commencing the running of a period of limitations on damages that are almost entirely speculative as to kind and extent. See, e.g., Archer v. Airline Pilots Ass’n Int’l, 609 F.2d 934, 938 (9th Cir. 1979), cert. denied, 446 U.S. 953 (1980) (“[wjhere future damages are too speculative to prove at the time the defendant’s wrongdoing takes place, ‘the cause of action for future damages, if they ever occur, will accrue only on the date they are suffered’”) (citation omitted).
In the instant case, it would have been highly speculative to reach any conclusion, prospectively, on the subject of whether the client would lose the property as a result of the attorney’s transactional negligence. Moreover, it would have been almost equally speculative whether, and to what extent, the client may have suffered the expense of attorney’s fees.
*1363 I suggest that the rule discussed above, consistent with the ruling by the California Supreme Court in Niles, is a rule of greater certainty that is also more conducive to judicial economy. Under the majority’s rule, a client would be forced to commence litigation against his or her attorney under circumstances that subsequent events might prove unnecessary and disruptive to the possibility of ongoing positive relations between attorney and client.
For the reasons discussed above, I respectfully dissent.

 This is not to say that the cause of action for negligent drafting of the trust instrument would have presented a proper claim for liability. As we noted in the Charleson opinion, it was uncontroverted that Ms. Trelease wanted Lichowsky to have discretion over the trust assets and specifically did not want Mr. Hardesty to restrict Lichowsky to secured borrowing. Charleson, n.5 at 884, 839 P.2d at 1307.

 Although the case of Bonz v. Sudweeks, 808 P.2d 876 (Idaho 1991), cited by the majority, does not lend support to the majority’s position, the earlier case of Griggs v. Nash, 775 P.2d 120 (Idaho 1989), does support the proposition cited by the majority.

 The California statute relating to attorney malpractice states that a cause of action shall not accrue while “[t]he plaintiff has not sustained actual *1361 injury.” Cal. Civ. Proc. Code § 340.6(a)(1) (West 1982). The “actual injury” requirement in the California statute is indistinguishable from Nevada’s “actual loss or damage” requirement as set forth in Sorenson, 94 Nev. 440, 581 P.2d 851 (1978).

In the recent case of Marshall v. Gibson, Dunn & Crutcher, 44 Cal. Rptr. 2d 339 (1995), the Court of Appeal, in a case involving attorney transactional negligence, concluded that the allegations of the complaint reasonably fell within the ruling of the California Supreme Court in ITT. The Marshall court also reaffirmed its earlier language in ITT Small Business Finance Corp. v. Niles, 9 Cal. 4th 250, 258 (1994), holding:
[W]e conclude that in transactional legal malpractice cases, when the adequacy of the documentation is the subject of dispute, an action for attorney malpractice accrues on entry of adverse judgment, settlement, or dismissal of the underlying action. It is at this point that the former client has discovered the fact of damage and suffered ‘actual injury’ due to the malpractice under section 340.6. Therefore, in the present case, the statute of limitations of section 340.6 was tolled until the action contesting the documentation was concluded.