136 Nev., Advance Opinion 29

IN THE SUPREME COURT OF THE STATE OF NEVADA

LAWRENCE D. CANARELLI; HEIDI
CANARELLI; AND FRANK MARTIN,
SPECIAL ADMINISTRATOR FOR THE
ESTATE OF EDWARD C. LUBBERS,
FORMER TRUSTEES,
Petitioners,
vs.
THE EIGHTH JUDICIAL DISTRICT
COURT OF THE STATE OF NEVADA,
IN AND FOR THE COUNTY OF
CLARK; AND THE HONORABLE
GLORIA STURMAN, DISTRICT
JUDGE,
Respondents,
    and
SCOTT CANARELLI, BENEFICIARY
OF THE SCOTT LYLE GRAVES
CANARELLI IRREVOCABLE TRUST
DATED FEBRUARY 24, 1998,
Real Party in Interest.

No. 78883

FILED

MAY 28 2020

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Original petition for a writ of prohibition or mandamus challenging a district court order compelling the production of documents in a trust matter.

*Petition granted.*

Campbell & Williams and J. Colby Williams, Donald J. Campbell, and Philip R. Erwin, Las Vegas,
for Petitioners.

Marquis Aurbach Coffing and Liane K. Wakayama, Las Vegas,
for Petitioner Frank Martin, Special Administrator for the Estate of Edward C. Lubbers.

SUPREME COURT
OF
NEVADA

(O) 1947A

20-20088

Solomon Dwiggins & Freer, Ltd., and Dana A. Dwiggins and Tess E. Johnson, Las Vegas,
for Real Party in Interest.

BEFORE THE COURT EN BANC.

*OPINION*

By the Court, STIGLICH, J.:

This court has not had the opportunity to address whether there is a fiduciary exception to the attorney-client privilege, whereby a fiduciary such as a trustee is prohibited from asserting the attorney-client privilege against a beneficiary on matters of trust administration. Because the Legislature created five specific exceptions to the attorney-client privilege, none of which are the fiduciary exception, we expressly decline to recognize the fiduciary exception in Nevada.

Petitioners are former trustees challenging a district court order compelling the production of allegedly privileged documents in a trust dispute with a beneficiary. The first group of documents at issue contains a former trustee's notes related to a phone call with counsel, and the second group of documents contains the former trustee's notes taken during a meeting with the other trustees, counsel, the opposing party, and an independent appraiser. Because the former trustee communicated the content of the first group of documents to counsel, we determine that these documents are protected by the attorney-client privilege and are therefore undiscoverable. Because the former trustee created the second group of documents in anticipation of litigation and the substantial-need exception to the work-product doctrine does not apply, we determine that these

SUPREME COURT
OF
NEVADA

(O) 1947A

2

documents are protected by the work-product doctrine and are therefore undiscoverable. Accordingly, the district court acted in excess of its jurisdiction in compelling the partial production of the disputed documents, and we therefore grant a writ of prohibition.

## BACKGROUND

*Underlying trust dispute*

Real party in interest Scott Canarelli is the beneficiary of the Scott Lyle Graves Canarelli Irrevocable Trust, dated February 24, 1998 (the Trust). Scott's parents, petitioners Lawrence and Heidi Canarelli, conveyed minority interests in their various business entities to Scott, which Scott in turn contributed to the Trust. Lawrence and Heidi served as the Trust's family trustees and, as such, made discretionary payments from the Trust to Scott for his health, education, support, and maintenance. In addition to the two family trustees, the Trust had one independent trustee, Edward Lubbers. Lubbers also served as Lawrence and Heidi's personal attorney; in this litigation, his interests are represented by petitioner Frank Martin as Special Administrator of the Estate of Edward C. Lubbers.

Scott alleges that the trustees unlawfully withheld Trust distributions. In 2012, Scott's attorney sent a letter to Lubbers stating that the trustees were demanding receipts from Scott's purchases in a manner that was per se bad faith. The letter also threatened a lawsuit to redress the trustees' discretionary payment decisions and remove them from their roles as trustees. After receiving the letter, Lubbers listed "Scott—lawsuit threatened" as a line item on one of Lawrence and Heidi's business entities' meeting agendas.

 

In May 2013, Lawrence and Heidi resigned from their roles as family trustees, and Lubbers became successor family trustee. A week after Lawrence and Heidi resigned, Lubbers entered into a purchase agreement exceeding $25 million on behalf of the Trust to sell off the Trust's ownership in Lawrence and Heidi's business entities.

Scott subsequently filed a petition asking the district court to compel Lubbers to provide all information related to the purchase agreement and an inventory and accounting for the Trust. Less than two weeks later, Lubbers retained attorneys David Lee and Carlene Renwick. According to billing records, Lee and Renwick spoke on the phone with Lubbers for approximately half an hour on October 14, 2013, about Lubbers' "responses to petition." Lee and Renwick continued to correspond with Lubbers via phone and email over the next two days, and Lubbers filed a response to Scott's petition on October 16, 2013. Scott filed a supplemental petition asserting new claims of breach of fiduciary duty against Lawrence, Heidi, and Lubbers. Lubbers resigned from his role as trustee in 2017 and died six months later.

*Disputed documents*

During discovery, Lawrence, Heidi, and Lubbers inadvertently disclosed documents containing Lubbers' notes. They attempted to claw back the documents, citing the attorney-client privilege and work-product doctrine.

The first group of disputed documents (Group 1 documents) contains Lubbers' notes related to his phone call with Lee and Renwick on October 14, 2013. One document contains Lubbers' typed notes composed in preparation of this conversation. The other documents contain Lubbers' handwritten notes contemporaneously memorializing the call. Lee and

Supreme Court
of
Nevada

(O) 1947A

Renwick confirmed in declarations that on their October 14, 2013, call with Lubbers, Lubbers asked about his potential response to Scott's petitions, of which there were three pending. They also verified that Lubbers stated "his views about several matters related to the petitions and potential strategies for defending against certain of the allegations contained therein."

The second group of disputed documents (Group 2 documents) contains Lubbers' notes contemporaneously memorializing an in-person meeting he attended on December 19, 2013, with the other trustees, counsel, Scott, and an independent trust appraiser.

*Procedural history*

Scott moved for a determination of privilege. The discovery commissioner found that each of the disputed documents appeared to contain Lubbers' notes. The commissioner then concluded that a portion of the Group 1 documents were protected by the attorney-client privilege and the work-product doctrine, but that other portions were discoverable. For the discoverable portions, the commissioner found that Lubbers' notes contained factual statements or information unrelated to the Trust. Alternatively, to the extent the factual statements intertwined with attorney-client privileged communications or work product, discovery was nonetheless permitted because of the fiduciary and common-interest exceptions to the attorney-client privilege and the substantial-need exception to the work-product doctrine. The commissioner concluded that the Group 2 documents were discoverable because, even if they constituted work product and contained primarily factual information, the substantial-need exception to the work-product doctrine applied.

The district court generally adopted the commissioner's findings.[1] However, the district court concluded that the commissioner's findings as to the Group 1 document containing Lubbers' typed notes were based upon assumptions that the notes were communicated to counsel and therefore protected by the attorney-client privilege. Nevertheless, the district court agreed with the commissioner's conclusion that a portion of the document was discoverable.

Lawrence, Heidi, and Lubbers petition this court for a writ of prohibition preventing the district court from compelling production of the disputed documents and a writ of mandamus directing the district court to find the disputed documents undiscoverable and order their return or destruction.

## DISCUSSION

This original proceeding asks us to determine whether the district court acted in excess of its jurisdiction in compelling the production of allegedly privileged material. Because the disclosure of privileged information is immediately harmful and this petition provides an opportunity to address a novel issue of law, we consider the petition. In doing so, we first consider whether the Group 1 documents are protected by the attorney-client privilege, thereby evaluating whether petitioners proved that the documents were communicated to counsel, whether the fiduciary exception to the attorney-client privilege exists in Nevada, and whether the common-interest exception to the attorney-client privilege applies. We then

---

[1]The commissioner and the district court disagreed as to one portion of one Group 1 document containing Lubbers' memorialization notes. Whereas the commissioner found that the document was discoverable in its entirety, the district court concluded that only a portion was discoverable because the other portions did not involve matters of trust administration.

decide whether the Group 2 documents are protected by the work-product doctrine and assess whether the substantial-need exception to the work-product doctrine is applicable.

*Writ relief*

"When the district court acts without or in excess of its jurisdiction, a writ of prohibition may issue to curb the extrajurisdictional act." *Toll v. Wilson*, 135 Nev. 430, 432, 453 P.3d 1215, 1217 (2019) (internal quotation marks omitted). "Therefore, even though discovery issues are traditionally subject to the district court's discretion and unreviewable by a writ petition, this court will intervene when the district court issues an order requiring disclosure of privileged information." *Id.* Writ relief is also appropriate when "an important issue of law needs clarification" and this court's invocation of its original jurisdiction serves public policy. *Diaz v. Eighth Judicial Dist. Court*, 116 Nev. 88, 93, 993 P.2d 50, 54 (2000) (internal quotation marks omitted). "One such instance is when a writ petition offers this court a unique opportunity to define the precise parameters of [a] privilege conferred by a statute that this court has never interpreted." *Id.* (alteration in original) (internal quotation marks omitted).

Because the district court order compels the disclosure of allegedly privileged information, we elect to entertain this petition for a writ of prohibition.[2] *See Las Vegas Dev. Assocs., LLC v. Eighth Judicial Dist. Court*, 130 Nev. 334, 338, 325 P.3d 1259, 1262 (2014) (establishing that a writ of prohibition, rather than a writ of mandamus, is the appropriate mechanism to correct an order that compels disclosure of privileged information). Our intervention will also clarify whether Nevada recognizes

---

[2]Therefore, the petition is denied insofar as it seeks a writ of mandamus.

 

the fiduciary exception to the attorney-client privilege and will serve public policy by helping trustees and attorneys understand the extent to which their communications are confidential.

*Standard of review*

"Discovery matters are within the district court's sound discretion, and we will not disturb a district court's ruling regarding discovery unless the court has clearly abused its discretion." *Club Vista Fin. Servs., LLC v. Eighth Judicial Dist. Court*, 128 Nev. 224, 228, 276 P.3d 246, 249 (2012). Findings of fact are given deference and will not be set aside unless they are clearly erroneous or not supported by substantial evidence. *Sowers v. Forest Hills Subdivision*, 129 Nev. 99, 105, 294 P.3d 427, 432 (2013). Conclusions of law, including the meaning and scope of statutes, are reviewed de novo. *Dewey v. Redev. Agency of Reno*, 119 Nev. 87, 93-94, 64 P.3d 1070, 1075 (2003).

*The Group 1 documents are protected by the attorney-client privilege*

Petitioners contend that the Group 1 documents are protected by the attorney-client privilege because the content of the documents was communicated to counsel. "The attorney-client privilege is a long-standing privilege at common law that protects communications between attorneys and clients." *Wynn Resorts, Ltd. v. Eighth Judicial Dist. Court*, 133 Nev. 369, 374, 399 P.3d 334, 341 (2017). The purpose of the attorney-client privilege "is to encourage clients to make full disclosures to their attorneys in order to promote the broader public interests of recognizing the importance of fully informed advocacy in the administration of justice." *Id.*

The Legislature has codified the attorney-client privilege:

A client has a privilege to refuse to disclose, and to prevent any other person from disclosing, confidential *communications*:

SUPREME COURT
OF
NEVADA

(O) 1947A

8

1. Between the client or the client's representative and the client's lawyer or the representative of the client's lawyer.

. . . .

3. Made for the purpose of facilitating the rendition of professional legal services to the client, by the client or the client's lawyer to a lawyer representing another in a matter of common interest.

NRS 49.095 (emphasis added). "Mere facts are not privileged, but communications about facts in order to obtain legal advice are." *Wynn Resorts*, 133 Nev. at 374, 399 P.3d at 341. The party asserting the privilege has the burden to prove that the material is in fact privileged. *Ralls v. United States*, 52 F.3d 223, 225 (9th Cir. 1995).

"It is well settled that privileges, whether creatures of statute or the common law, should be interpreted and applied narrowly." *See Clark Cty. Sch. Dist. v. Las Vegas Review-Journal*, 134 Nev. 700, 705, 429 P.3d 313, 318 (2018) (internal quotation marks omitted). However, "if the purpose of the attorney-client privilege is to be served, the attorney and client must be able to predict with some degree of certainty whether particular discussions will be protected." *Upjohn Co. v. United States*, 449 U.S. 383, 393 (1981).

We have not yet determined the extent to which an individual must deliver his or her notes to an attorney for the notes to constitute "communications" under NRS 49.095. Federal courts, however, have concluded that physical delivery is unnecessary for common-law attorney-client privilege to attach. *See United States v. DeFonte*, 441 F.3d 92, 96 (2d Cir. 2006) (reasoning that "[c]ertainly, an outline of what a client wishes to discuss with counsel—and which is subsequently discussed with one's counsel—would seem to fit squarely within our understanding of the scope

of the privilege"); *see also United States v. Jimenez*, 265 F. Supp. 3d 1348, 1351-53 (S.D. Ala. 2017) (determining that an individual's emails that served as an outline for future attorney-client conversations but were never delivered to his attorney were nonetheless privileged); *Cencast Servs., L.P. v. United States*, 91 Fed. Cl. 496, 505-06 (Fed. Cl. 2010) (reasoning that it should be sufficient to find an attorney-client privilege if a party created the notes to aid in a meeting with an attorney).

We agree and conclude that, under NRS 49.095, the physical delivery of notes is not required. NRS 49.095 clearly protects communications. *See* NRS 49.095 ("A client has a privilege to refuse to disclose, and to prevent any other person from disclosing, confidential *communications* . . . ." (emphasis added)). Thus, so long as the content of the notes was previously or is subsequently communicated between a client and counsel, the notes constitute communications subject to the attorney-client privilege. Holding otherwise would discourage a client from diligently preparing for a conversation with counsel and undermine a client's ability to confidently memorialize any legal advice received. *See Upjohn Co.*, 449 U.S. at 392 (construing the privilege to avoid discouraging a client from conveying relevant information to counsel). As a result, an attorney would be unable to provide fully informed advocacy. *See Wynn Resorts*, 133 Nev. at 374, 399 P.3d at 341 (holding that the purpose of the attorney-client privilege is to encourage clients to make full disclosures to their attorneys to promote fully informed advocacy). In order to give full force to the attorney-client privilege, notes that were communicated between a client and counsel must therefore be protected.

After reviewing the Group 1 documents, we determine that the district court clearly abused its discretion in finding that petitioners did not prove that the notes were communicated to counsel. Petitioners presented Lee and Renwick's billing records, which indicated that Lee and Renwick spoke by phone with Lubbers on October 14, 2013, about Lubbers' response to Scott's petitions, one of which Scott filed just two weeks prior. Furthermore, Lee and Renwick attested that on the call, Lubbers stated his views about several matters related to Scott's petitions and potential strategies for defending against them. Based on the date and content of the Group 1 documents, it is clear that the content of both the preparation notes and the memorialization notes was communicated between Lubbers and counsel.

In so recognizing, we emphasize that the party asserting the privilege does not have to prove that the client spoke each and every word written in his or her notes to counsel verbatim. Such a requirement would lead to the unreasonable result of permitting the disclosure of confidential information that was not orally conveyed exactly as it was recorded on paper, or vice versa. *See City of Reno v. Bldg. & Constr. Trades Council of N. Nev.*, 127 Nev. 114, 121, 251 P.3d 718, 722-23 (2011) ("[T]his court will not read statutory language in a manner that produces absurd or unreasonable results." (internal quotation marks omitted)). Lee and Renwick's billing records, along with their declarations, are sufficient proof of communication.

We also hold that the district court clearly abused its discretion to the extent it found that the factual information contained in the Group 1 documents was not subject to the attorney-client privilege. Although we agree that the Group 1 documents contain factual information, facts

SUPREME COURT
OF
NEVADA

(O) 1947A

11

communicated in order to obtain legal advice do not fall outside the privilege's protections. *See Wynn Resorts*, 133 Nev. at 374, 399 P.3d at 341 (holding that while facts are not privileged, communications about facts in order to obtain legal advice are). Here, the factual information was relayed in order to obtain advice about how to respond to Scott's petitions. The Group 1 documents are therefore protected by the attorney-client privilege.

*There is no applicable exception to the attorney-client privilege*

Scott argues that even if the Group 1 documents are subject to the attorney-client privilege, they are nonetheless discoverable due to (1) the fiduciary exception and (2) the common-interest exception.

1.

Scott contends that this court should recognize the fiduciary exception to the attorney-client privilege and apply it to the Group 1 documents. The fiduciary exception, as adopted in other states, "provides that a fiduciary, such as a trustee of a trust, is disabled from asserting the attorney-client privilege against beneficiaries on matters of trust administration." *Murphy v. Gorman*, 271 F.R.D. 296, 305 (D.N.M. 2010). NRS 49.015 provides that privileges in Nevada are recognized only as "required by the Constitution of the United States or of the State of Nevada" or by a specific statute. NRS 49.115 expressly lists five exceptions to the attorney-client privilege, none of which are the fiduciary exception.

This court has recognized "the legislature's demonstrated ability to draft privilege statutes with very precise parameters." *Ashokan v. State, Dep't of Ins.*, 109 Nev. 662, 670, 856 P.2d 244, 249 (1993). "The maxim 'EXPRESSIO UNIUS EST EXCLUSIO ALTERIUS', the expression of one thing is the exclusion of another, has been repeatedly confirmed in this State." *Galloway v. Truesdell*, 83 Nev. 13, 26, 422 P.2d 237, 246 (1967);

Supreme Court
of
Nevada

(O) 1947A

12

*see also Ramsey v. City of N. Las Vegas*, 133 Nev. 96, 102, 392 P.3d 614, 619 (2017); *Thomas v. Nev. Yellow Cab Corp.*, 130 Nev. 484, 488, 327 P.3d 518, 521 (2014). Jurisdictions with statutory attorney-client privileges like Nevada have overwhelmingly refused to adopt a fiduciary exception by judicial decree. *See, e.g.*, *Wells Fargo Bank v. Super. Court*, 990 P.2d 591, 596 (Cal. 2000); *Crimson Trace Corp. v. Davis Wright Tremaine LLP*, 326 P.3d 1181, 1195 (Or. 2014); *Huie v. DeShazo*, 922 S.W.2d 920, 924-25 (Tex. 1996).

Because the Legislature adopted five specifically defined exceptions to the attorney-client privilege in NRS 49.115, we decline to create a sixth by judicial fiat. We therefore refuse to recognize the fiduciary exception.

2.

Scott also argues that the common-interest exception to the attorney-client privilege applies to the Group 1 documents. The common-interest exception is statutory in Nevada and provides that there is no attorney-client privilege "[a]s to a communication relevant to a matter of common interest between two or more clients if the communication was made by any of them to a lawyer retained or consulted in common, when offered in an action between any of the clients." NRS 49.115(5).

We hold that the common-interest exception does not apply to the Group 1 documents. NRS 49.115(5) limits the common-interest exception to situations where (1) an attorney is retained or consulted in common and (2) the communication is relevant to a matter of common interest. *See Cromer v. Wilson*, 126 Nev. 106, 109, 225 P.3d 788, 790 (2010) (holding that where a statute is clear and unambiguous, this court gives

effect to the ordinary meaning of the plain language without turning to other rules of construction).

First, Lee and Renwick were not retained or consulted in common. The Legislature has made clear that an attorney representing a trustee as a fiduciary does not result in an attorney-client relationship between the attorney and the beneficiary. *See* NRS 162.310(1)[3] ("An attorney who represents a fiduciary does not, solely as a result of such attorney-client relationship, assume a corresponding duty of care or other fiduciary duty to a principal.").

Second, Lubbers' communication with Lee and Renwick was not relevant to a matter of common interest. Rather, Lubbers was adverse to Scott at the time he communicated with counsel. Scott's counsel sent Lubbers a letter alleging that the trustees acted in bad faith. Scott's petition, asking Lubbers to provide information about the purchase agreement he entered into on behalf of the Trust, contained adversarial allegations as a result of the falling out between Scott and his parents and led to Scott's eventual claims that Lubbers breached his fiduciary duties. It is therefore apparent that Lubbers consulted with Lee and Renwick for his own protection, not for a matter of common interest.

While a beneficiary is ordinarily able to inspect a trust's books and records, allowing a beneficiary to view communications between a trustee and his or her attorney when the trustee is adverse to the

---

[3]To the extent that the parties relied on *Charleson v. Hardesty*, 108 Nev. 878, 882-83, 839 P.2d 1303, 1306-07 (1992), for the proposition that an attorney for a trustee owes a fiduciary duty to the beneficiary, we note that this decision was superseded by NRS 162.310(1). *See* 2011 Nev. Stat., ch. 270, § 175, at 1465 (enacting NRS 162.310(1) in 2011, after *Charleson* was published).

beneficiary would discourage trustees from seeking legal advice. *See Huie*, 922 S.W.2d at 924-25 (reasoning that a trustee "must be able to consult freely with his or her attorney to obtain the best possible legal guidance"); 3 Austin Wakeman Scott, William Franklin Fratcher & Mark L. Ascher, *Scott and Ascher on Trusts* § 17.5 (4th ed. 2007) ("[W]hen there is a conflict of interest between the trustee and the beneficiaries and the trustee procures an opinion of counsel for the trustee's own protection, the beneficiaries are generally not entitled to inspect it."). Moreover, individuals may be unwilling to serve as trustees if they fear that their communications with counsel will be used against them, and attorneys representing trustees may be reluctant to provide transparent advice. Therefore, we conclude that NRS 49.115(5), the common-interest exception, does not apply to the Group 1 documents. Because the Group 1 documents are protected by the attorney-client privilege and no exception applies, the district court clearly exceeded its authority when it allowed Scott to retain those documents.

*The Group 2 documents are protected by the work-product doctrine*

Petitioners argue that the Group 2 documents containing Lubbers' notes memorializing a meeting with the other trustees, counsel, Scott, and an independent appraiser are protected by the work-product doctrine. As codified in NRCP 26(b)(3)(A), the work-product doctrine prevents a party from discovering documents "that are prepared in anticipation of litigation . . . by or for another party. . . ." "[D]ocuments are prepared in anticipation of litigation when in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Wynn Resorts*, 133 Nev. at 384, 399 P.3d at 348 (internal

quotation marks and citation omitted). The court must consider the totality of the circumstances. *Id.* at 384-85, 399 P.3d at 348.

For protected work product to become discoverable, a party must show "that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." NRCP 26(b)(3)(A)(ii). The party seeking discovery bears the burden, and "[a] mere assertion of the need will not suffice." *Wardleigh v. Second Judicial Dist. Court*, 111 Nev. 345, 358, 891 P.2d 1180, 1188 (1995).

We determine that the district court clearly abused its discretion in finding that the Group 2 documents were not protected by the work-product doctrine. First, considering the totality of the circumstances, we conclude that the Group 2 documents were prepared by Lubbers in anticipation of litigation. Scott's counsel sent Lubbers a letter alleging that the trustees acted in bad faith, upon which Lubbers added the line item "Scott—lawsuit threatened" to Lawrence and Heidi's business entities' meeting agenda. Additionally, Scott's petition asking Lubbers to provide information about the purchase agreement he entered into on behalf of the Trust contained adversarial allegations and required a response with legal implications. At the time Lubbers wrote the notes contained in the Group 2 documents, he anticipated adversarial litigation.

Second, we determine that the district court abused its discretion to the extent it found that the substantial-need exception applied. Our review of the Group 2 documents confirms that Lubbers' notes memorialized his meeting with the other trustees, counsel, Scott, and an independent appraiser. Although Lubbers has since died, Scott was at the meeting and therefore does not have a substantial need for the Group 2 documents. Moreover, Scott can access any pertinent information he may

Supreme Court
OF
Nevada

(O) 1947A

16

have missed without undue hardship by deposing one of the other attendees. Because the Group 2 documents are protected by the work-product doctrine and the substantial-need exception does not apply, the district court lacked authority to allow Scott to retain the Group 2 documents.

## CONCLUSION

Because petitioners showed that Lubbers communicated the content of the Group 1 documents to counsel, we determine that these documents are protected by the attorney-client privilege and are therefore undiscoverable. In doing so, we explicitly refuse to recognize by judicial decree the fiduciary exception to the attorney-client privilege and conclude that the common-interest exception to the attorney-client privilege does not apply to this case. Because Lubbers took the notes contained in the Group 2 documents in anticipation of litigation and the substantial-need exception to the work-product doctrine is inapplicable, we determine that the Group 2 documents are protected by the work-product doctrine and are therefore undiscoverable. Accordingly, the district court acted in excess of its jurisdiction in compelling the partial production of the disputed documents.

We therefore grant this petition and direct the clerk of this court to issue a writ of prohibition prohibiting the district court from compelling or allowing the production of the disputed documents.

_____, J.
Stiglich

We concur:

_____, C.J.
Pickering

_____, J.
Gibbons

_____, J.
Hardesty

_____, J.
Parraguirre

_____, J.
Cadish

_____, J.
Silver

SUPREME COURT
OF
NEVADA

(O) 1947A