*1351 OPINION
By the Court,
Young, J.:
This is an appeal from an order of the district court dismissing appellants’ complaint. On November 12, 1991, appellants filed in the district court a complaint alleging causes of action against respondents for legal malpractice, breach of contract, negligence and breach of fiduciary duty. On April 7, 1992, the district court entered an order granting respondents’ motion to dismiss and dismissing appellants’ complaint as barred by the statute of limitation. This appeal followed.
In 1979, appellants entered into an agreement for the sale of certain real property. The agreement' called for the buyers to execute a promissory note in favor of appellants and Dave Andrulli, appellants’ father, as joint tenants. The promissory note which appellants received provided, however, for the buyer to pay to the order of Dave Andrulli and appellants, or to the order of the survivors of them, without explicitly mentioning joint tenants or a joint tenancy. On April 14, 1986, after Dave Andrulli had died, Lauri Andrulli, his wife and appellants’ stepmother, filed suit to have the note declared held in a tenancy in common, so that it would become part of the estate of which she was the beneficiary. On September 1, 1987, the district court entered an order finding that the note was held by appellants and Dave Andrulli as joint tenants and not as tenants in common. On November 16, 1987, the district court granted partial summary judgment in appellants’ favor. On November 16, 1987, the district court entered an order denying appellants’ request for attorneys’ fees. The underlying action was not concluded until April 16, 1990, when the district court entered an order and stipulation for dismissal with prejudice.
On November 12, 1991, appellants filed in the district court their complaint for legal malpractice against respondents. A now-deceased attorney from respondent Henderson and Nelson had prepared the defective promissory note, and respondent Stewart Title Company was the escrow agent for the transaction involving the note. On April 7, 1992, the district court entered an order granting respondents’ motion to dismiss appellants’ complaint based on expiration of the statute of limitation. This appeal followed.
Appellants became aware of the malpractice, at the latest, on April 14, 1986, when Lauri Andrulli filed the action seeking construction of the note. The district court entered its order *1352 denying appellants’ motion for attorney’s fees in that action on November 16, 1987. Appellants filed their complaint for legal malpractice on November 12, 1991, four years and seven months after Lauri Andrulli filed her complaint, but within four years of the date that the district court entered the order denying their request for attorney’s fees.
Appellants contend that the district court erred in finding their claims barred by the statute of limitation and in dismissing their claim on that basis. Specifically, appellants contend that the statute of limitation should begin to run on the date the district court entered its order denying their motion for attorney’s fees, rather than on the date Lauri Andrulli filed her complaint, because they could not know the existence and extent of their damages until the district court had ruled on Lauri Andrulli’s lawsuit and on their request for attorney’s fees.
We disagree. NRS 11.207(1) provides that a malpractice action against an attorney must be initiated within four years after the plaintiff suffers damages and discovers, or through the use of reasonable diligence should have discovered, the material facts constituting the cause of action. In this case, appellants became aware of the defect in the note in April 1986. Therefore, appellants’ complaint for attorney malpractice was time-barred when it was filed on November 12, 1991, more than four years after appellants discovered the defect in the note.
Granted, appellants were not aware of the precise extent of their damages when they discovered the defect in the note. However, appellants were aware that there would be damages of some kind. Had respondents’ complaint been dismissed, as ultimately happened, there would be attorney’s fees for successfully defending the action. Had respondents been successful, appellants’ damages would have been even greater due to both the loss of the property found to be held in a tenancy in common, as well as their attorney’s fees.
Public policy encourages litigants to bring their actions to an end as quickly as possible, hence the existence of statutes of limitation. In this case, nearly twelve years elapsed from the time of the defective drafting until the malpractice action was filed. One can speculate that this period could have been considerably longer had the drafting taken place even earlier.
Appellants cite as authority K.J.B., Inc. v. Drakulich, 107 Nev. 367, 811 P.2d 1305 (1991), for the rule that a malpractice action is premature and the statute of limitation does not begin to run until the conclusion of the underlying litigation. However, the facts of the instant case do not fall within the holding of K.J.B. While K.J.B. involved attorney error in the course of *1353 litigation, the instant case involved a drafting error that gave rise to the litigation, but was nonetheless separate from the underlying litigation. Therefore, the rule in K.J.B. does not apply to these facts.
One of this court’s more recent holdings is much more instructive on this issue. Charleson v. Hardesty, 108 Nev. 878, 839 P.2d 1303 (1992), involved a defective trust instrument. In Charleson, we held that the statute of limitation for an action for an attorney’s alleged drafting error began to run from the date the client hired an independent attorney to examine the document. Id. at 884, 839 P.2d at 1307-08. Although we did not explicitly hold whether litigation based on the alleged error tolled the statute of limitation, there was such litigation and the statute of limitation was not tolled. In the case at bar, appellants became aware of the drafting error at the time the complaint was filed, forcing them to obtain legal counsel. Therefore, the statute of limitation began to run at that time.
The trend in our neighboring jurisdictions appears to be that the statute of limitation for an attorney malpractice action begins to run when the client suffers harm and learns or should have learned of the harm, even when the extent of the damages is not learned until a later date. See, e.g., Bonz v. Sudweeks, 808 P.2d 876 (Idaho 1991) (action for malpractice accrued when plaintiffs learned of cloud on title due to attorney’s improper recording and investor refused to participate in sale); Dearborn Animal Clinic, P.A. v. Wilson, 806 P.2d 997 (Kan. 1991) (statute began to run when plaintiffs answered interrogatories in underlying action thereby learning of attorney error and damages); Stevens v. Bispham, 851 P.2d 556 (Or. 1993) (claim accrues and statute begins to run when client suffers both damage and knows or should know the damage was caused by attorney’s acts or omissions); Magnuson v. Lake, 717 P.2d 1216 (Or. Ct. App. 1986) (clients suffered damages, and statute of limitation began to run when they were forced to defend declaratory judgment action, even though extent of damages could not be ascertained until a later date).
An action accrues when the litigant discovers, or should have discovered, the existence of damages, not the exact numerical extent of those damages. In this case, the issue of damages became a reality when appellants became aware of the drafting defect upon the filing of the lawsuit. Appellants could have filed their complaint for attorney malpractice at that time, for even though the amount of the damages would have been somewhat uncertain, the existence of those damages was not.
*1354 There is, of course, the issue as to the possible dismissal of a lawsuit for attorney malpractice during the pendency of another related action that would resolve the extent of damages. Such would be the case if the duration of the related lawsuit caused the action for attorney malpractice to extend beyond the mandatory five-year dismissal rule of NRCP 41(e). However, expert testimony could be used to provide the court with an indication of the extent of damages. This court has approved the use of expert testimony to assist in the determination of damages that are uncertain. See, e.g., Freeman v. Davidson, 105 Nev. 13, 768 P.2d 885 (1989). The fact that damages are somewhat uncertain is not fatal to a cause of action. Had appellants filed their complaint when the amount of damages was still uncertain, expert testimony could have been offered in the event that the five-year mandatory dismissal approached without a final resolution of the extent of the damages.
The rule set forth herein is in accordance with reason and the relevant statute, NRS 11.207(1). A plaintiff necessarily “discovers the material facts which constitute the cause of action” for attorney malpractice when he files or defends a lawsuit occasioned by that malpractice, and he “sustains damage” by assuming the expense, inconvenience and risk of having to maintain such litigation, even if he wins it. Other statutory limitations are not tolled to wait for damages to accrue in an amount certain. The limitation period for medical malpractice is not tolled to await all the bills for remedial treatment, which could include a lifetime of special care. See NRS 41A.097. A homeowner who knows of a construction defect would be ill advised to wait until the house falls down to sue the builder. See Tahoe Village Homeowners v. Douglas Co., 106 Nev. 660, 799 P.2d 556 (1990). We see no reason to impose a special rule for attorney malpractice. Further, the rule set forth herein should not deter clients from allowing their attorney to “cure” an error. It merely means that the client must observe the limitation period in doing so.
We do not, as the dissent suggests, apply different reasoning to transactional attorney malpractice and malpractice occurring in that litigation. Rather, we are constrained by the plain meaning of the words in the limitation statute. Unlike a drafting error that gives rise to a lawsuit, the existence of any damages from an error in ongoing litigation is not known until the litigation concludes. Consequently, the elements of the limitation statute are not satisfied until that time.
We also note that, among the authorities cited by the dissent, only California has explicitly adopted for transactional malpractice the rule proposed by the dissent. California’s statute of *1355 limitation for attorney malpractice differs significantly from Nevada’s statute, most notably in providing a limitation period of only one year for attorney malpractice, compared to Nevada’s four-year limitation. See Cal. Civ. Proc. Code § 340.6(a)(1) (West 1982). Arizona, which has followed the reasoning proposed by the dissent, has a two-year limitation period. See Lansford v. Harris, 850 P.2d 126 (Ariz. Ct. App. 1992). Nevada’s four-year limitation period generally provides litigants more than adequate time to file a malpractice suit and obviates the need for the approach taken by the dissent.
Appellants in this case suffered harm and discovered, or should have discovered, their cause of action on the date respondents filed their lawsuit. It was at that time that appellants had to hire an attorney to defend against the suit. Therefore, the statute of limitation for an attorney malpractice action commenced running on that date. Appellants failed to file their complaint within four years of that date as required by NRS 11.207(1). Consequently, their action was not timely and was properly dismissed.
For the forgoing reasons, we affirm the decision of the district court.
Shearing and Rose, JJ., concur.