**NOT FOR PUBLICATION**



FILED

JUN 30 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

In re: JAN GLASER; TATYANA
KHOMYAKOVA,

Debtors,

_____

SHELLEY D. KROHN, Chapter 7
Trustee,

Appellant,

v.

JAN GLASER; TATYANA
KHOMYAKOVA,

Appellees.

No. 19-60015

BAP No. 18-1175

MEMORANDUM[*]

Appeal from the Ninth Circuit
Bankruptcy Appellate Panel
Kurtz, Taylor, and Brand, Bankruptcy Judges, Presiding

Argued and Submitted April 29, 2020
San Francisco, California

_____

[*]      This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

Before: GILMAN,[**] GRABER, and COLLINS, Circuit Judges.

Shelley Krohn, Chapter 7 Trustee ("Trustee") for the bankruptcy estate of Jan Glaser and Tatyana Khomyakova ("Debtors"), appeals from the Bankruptcy Appellate Panel's ("BAP") order concluding that Debtors' bankruptcy estate does not include their cause of action for legal malpractice. Reviewing de novo, In re Mihranian, 937 F.3d 1214, 1216 (9th Cir. 2019), we affirm.

Debtors' malpractice claim was not property of their bankruptcy estate. A bankruptcy estate encompasses "all legal or equitable interests of the debtor in property as of the commencement" of their bankruptcy case, 11 U.S.C. § 541(a)(1), which includes causes of action that have accrued before that commencement, Cusano v. Klein, 264 F.3d 936, 945–47 (9th Cir. 2001). Whether a cause of action has accrued turns on state law. Id. at 947. Under Nevada law, a claim for legal malpractice does not accrue until "damage has been sustained." Hewitt v. Allen, 43 P.3d 345, 347–48 (Nev. 2002) (en banc). The bankruptcy court and the BAP held that the damages caused by the malpractice at issue occurred post-petition, when Debtors' attorney failed to dismiss the bankruptcy case prior to discharge

[**] The Honorable Ronald Lee Gilman, United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

2

and when Debtors received notice from the IRS seeking payment of the outstanding tax debt. We agree.

Segal v. Rochelle, 382 U.S. 375 (1966), does not require a contrary conclusion. The trustee in Segal asserted the interests of the debtor that existed at the commencement of the case. Here, Debtors had no interest in a cause of action for legal malpractice until they incurred damages, which happened after their bankruptcy case commenced. Accordingly, there was no interest in that cause of action for the Trustee to assert.

The Trustee contends that Nevada law speaks to accrual only for purposes of statutes of limitation, but not for purposes of property ownership. Although we recognized in Cusano, 264 F.3d at 947, that a claim may accrue differently in those contexts, the Trustee—who bears the burden of establishing that the cause of action is property of the estate, In re Jacobson, 676 F.3d 1193, 1200–01 (9th Cir. 2012)—has not shown that the accrual of a legal malpractice claim differs by context under Nevada law. Therefore, the BAP did not err in concluding that Debtors' malpractice claim was not the property of their bankruptcy estate.

The dissent, relying on Gonzales v. Stewart Title, 905 P.2d 176 (Nev. 1995) (en banc), overruled on other grounds by Kopicko v. Young, 971 P.2d 789, 791 n.3 (Nev. 1998), asserts that Debtors' malpractice claim had accrued as of the

3

commencement of their bankruptcy case because "attorney intervention" would have been required to correct the improper filing.  But the dissent misreads Gonzales.  That case does not stand for the proposition that "any need to have an attorney take action to address a mistake is itself a compensable injury, giving rise to a right to sue for malpractice."  Indeed, that case did not involve an attorney's "address[ing] a mistake" at all.  Rather, Gonzales involved "a drafting error that g[ave] rise to a lawsuit."  905 P.2d at 179; see also id. at 178–79 ("[T]he rule set forth herein should not deter clients from allowing their attorney to 'cure' an error.").  A brief review of Gonzales illuminates why our conclusion is unperturbed by its holding.

Gonzales involved a malpractice claim against a lawyer who negligently drafted a promissory note, which led to subsequent litigation between a decedent's spouse and children over who owned the decedent's interest in the note.  Id. at 176–77.  The spouse sued the children, and the children won.  Id.  When the children thereafter sued the lawyer for malpractice, the Gonzales court had to determine when their malpractice claim had accrued.  Concluding that the claim accrued when the spouse filed the complaint against the children, the court emphasized that, when the complaint was filed, the "existence of damages" became certain.  Id. at 178. Some level of damages was guaranteed because the

4

children had to defend themselves. They had to obtain counsel and undertake "the expense, inconvenience and risk of . . . litigation," as a result of the complaint. Id. The "attorney intervention" involved in Gonzales was therefore the mounting of a civil defense in an action that came after transactional malpractice.

Here, the "attorney intervention" required was the correction of a mistake. As a result of the improper filing, Debtors were not forced to obtain new counsel or participate in entirely new litigation. If Debtors' bankruptcy counsel had dismissed the petition, without charging Debtors for the associated costs, no damages would have arisen. The "existence of damages" was certain for the Gonzales children because they had to defend themselves in a civil action. Here, the "existence of damages" was not certain until the IRS asserted its claim against Debtors—which occurred post-petition—just as the "existence of damages" for the children in Gonzales was not certain until they were sued. Accordingly, Debtors' malpractice claim was not property of their bankruptcy estate.

**AFFIRMED.**

5

*Krohn v. Glaser*, No. 19-60015

COLLINS, Circuit Judge, dissenting:

I respectfully dissent from the majority's holding that the malpractice cause of action that Debtors Jan Glaser and Tatyana Khomyakova ("Debtors") have against their bankruptcy attorney is not part of their bankruptcy estate.

Had Debtors' counsel filed their bankruptcy petition six days later than she did, Debtors would have been able to discharge more than a quarter-million dollars in tax debt to the IRS. Because, however, counsel negligently filed the petition too early, the IRS tax debt was not discharged. In determining whether the resulting malpractice cause of action belonged to Debtors' bankruptcy estate, we must determine whether that cause of action existed "as of the commencement of the case." 11 U.S.C. § 541(a)(1). If it did, then it belonged to the estate, but if that cause of action did not come into existence until *after* the filing of Debtors' bankruptcy petition, then it remained the property of Debtors. In answering this question, we look to state law, but in so doing we must carefully distinguish between state-law principles for determining when "accrual has occurred *for purposes of ownership*"—which is what counts for purposes of § 541(a)(1)—and "principles of discovery and tolling, which may cause the statute of limitations to run after accrual has occurred for purposes of ownership in a bankruptcy proceeding." *Cusano v. Klein*, 264 F.3d 936, 947 (9th Cir. 2001) (emphasis

added).  Here, this distinction makes all the difference.

Under Nevada law, "[t]he elements for a claim of legal malpractice are the existence of 'an attorney-client relationship, a duty owed to the client by the attorney, breach of that duty, and the breach as proximate cause of the client's damages.'" *Allyn v. McDonald*, 910 P.2d 263, 266 (Nev. 1996) (citation omitted). At the moment that Debtors' bankruptcy petition was filed, there clearly was an attorney-client relationship, and Debtors' attorney had breached her duty to her clients by negligently filing the petition too early.  The only question is whether that negligence had yet caused any damage to Debtors.  The Bankruptcy Appellate Panel ("BAP") held that, because Debtors' attorney could have cured her malpractice *after* the filing of the petition by moving to dismiss Debtors' case and then later refiling it, any damage that Debtors experienced necessarily occurred only *post*-petition, and the majority affirms that conclusion.  This holding cannot be squared with the applicable Nevada law.

Even under the BAP's and the majority's view of the case, the Debtors' too-early filing of the petition *immediately* placed Debtors in a prejudicial position that counts as damage under Nevada law.  As the BAP acknowledged, in the *absence* of *some* action to undo the early filing of the petition, the IRS debt was not going to be discharged.  The parties both agree that the relevant malpractice accrual rule in this case is the rule concerning transactional malpractice, and the Nevada

2

Supreme Court has held that, under that rule, any need to have an attorney take action to address a mistake is *itself* a compensable injury, giving rise to a right to sue for malpractice. *Gonzales v. Stewart Title*, 905 P.2d 176, 178 (Nev. 1995) (en banc) (where plaintiffs "became aware of the drafting error at the time the complaint was filed, forcing them to obtain legal counsel," plaintiffs "could have filed their complaint for attorney malpractice at that time"), *overruled on other grounds by Kopicko v. Young*, 971 P.2d 789, 791 n.3 (Nev. 1998). Here, at the moment that Debtors' counsel filed the bankruptcy petition, they were placed in a prejudicial position that would require attorney intervention. Under *Gonzales*, that constitutes injury, thereby completing the cause of action for property purposes.[1] The cause of action therefore existed "as of the commencement" of the bankruptcy case, 11 U.S.C. § 541(a)(1), and it therefore belonged to the estate. *See Johnson v. Alvarez (In re Alvarez)*, 224 F.3d 1273, 1278 (11th Cir. 2000) (citing 11 U.S.C. § 541(a)(1)) (holding that a claim arising at the instant of filing is part of the estate); *Winick & Rich, P.C. v. Strada Design Assocs., Inc. (In re Strada Design Assocs., Inc.)*, 326 B.R. 229, 235–36 (Bankr. S.D.N.Y. 2005) (same).

The majority agrees that, under *Gonzales*, the need to incur legal expenses arising from transactional malpractice constitutes cognizable damages, but the

---

[1] It is irrelevant that *Gonzales* tolls the time to sue until the plaintiff *discovers* that injury. *See Cusano*, 264 F.3d at 947.

3

majority wrongly seeks to confine *Gonzales* to its specific facts by drawing an arbitrary distinction between legal expenses that are incurred in defending against litigation (as in *Gonzales*) and legal expenses that are required for "the correction of a mistake" (as here). *See* Mem. Dispo. at 4–5. The majority suggests that *Gonzales* implicitly drew such a distinction by stating that its damages rule "should not deter clients from allowing their attorney to 'cure' an error," 905 P.2d at 178–79. *See* Mem. Dispo. at 4. *Gonzales* itself refutes this contention. The majority overlooks the very next sentence, in which the *Gonzales* court stated that, in insisting that their attorney "'cure' an error," the "client[s] *must observe the limitations period in doing so*." *Id*. at 179 (emphasis added). This comment would make no sense if, as the majority posits, *Gonzales*' rule only applied when *litigation* expense is incurred. *Gonzales* thus explicitly confirms that, in the transactional context, an attorney error that necessitates attorney effort *to fix the error* constitutes cognizable damage that provides a complete cause of action and starts the running of the statute of limitations.[2]

---

[2] *Gonzales*' comments on this score likewise squarely refute the majority's suggestion that, if an attorney agrees to cure an error for free, there is no cognizable damage and the clock never begins to run. *See* Mem. Dispo. at 5. More generally, the majority's suggestion makes no more sense than saying that *any* tortfeasor's offer to cover an injured party's damages would somehow mean that the victim therefore has no cause of action to sue. An offer to gratuitously redress a tortiously inflicted injury does not disprove the existence of injury; on the contrary, it confirms it.

Even if Nevada law delayed the accrual of the cause of action until the later date on which counsel actually takes steps to cure the already-built-in mistake (and, as explained above, I see no basis for concluding that Nevada law does so), the Supreme Court's decision in *Segal v. Rochelle*, 382 U.S. 375 (1966), would still consider that property to be part of the estate for federal bankruptcy law purposes. In *Segal*, the Supreme Court held that tax refund claims that were made after the debtors' bankruptcy filings were "sufficiently rooted in the pre-bankruptcy past" that they counted as property of the estate as of "the date the bankruptcy petitions were filed." *Id.* at 379–80. Although the decision in *Segal* preceded the enactment of the current Bankruptcy Code, including its definition of "property" in 11 U.S.C. § 541, the quoted language remains good law. *See Rau v. Ryerson* (*In re Ryerson*), 739 F.2d 1423, 1426 (9th Cir. 1984) ("The Code follows *Segal* insofar as it includes after-acquired property 'sufficiently rooted in the prebankruptcy past.'"). Here, Debtors' injury—the need to obtain legal assistance to fix the mistake—was locked in at the moment of filing. Therefore, even if Nevada law delayed formal accrual until Debtors actually used the services of a lawyer to fix the mistake, their malpractice claim would be "sufficiently rooted" in the pre-bankruptcy past that it should be considered property of the bankruptcy estate.

I respectfully dissent.