141 Nev., Advance Opinion 72

IN THE COURT OF APPEALS OF THE STATE OF NEVADA

| | |
|---|---|
| CHRISTINE MELEO BERNSTEIN, Appellant, vs. SHAWN L. MORRIS AND SHAWN L. MORRIS, LTD., Respondents. | No. 88873-COA **FILED** DEC 23 2025 ELIZABETH A. BROWN CLERK OF SUPREME COURT BY _____ CHIEF DEPUTY CLERK |

Christine Meleo Bernstein appeals from a district court order granting a motion to dismiss a legal malpractice complaint. Eighth Judicial District Court, Clark County; Carolyn Ellsworth, Sr. Judge.

*Reversed and remanded.*

Blut Law Group, APC, and Elliot S. Blut and Zahava Miriam Lieberman, Las Vegas,
for Appellant.

Whitmire Law, PLLC, and James E. Whitmire, Las Vegas,
for Respondents.

———————————

BEFORE THE COURT OF APPEALS, BULLA, C.J., and GIBBONS and WESTBROOK, JJ.

*OPINION*

By the Court, BULLA, C.J.:

Traditionally, within the common law, "every right, when withheld, must have a remedy, and every injury its proper redress."

25-55935

*Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 163 (1803) (internal quotation marks omitted). This overarching principle of the ability to redress wrongs is ingrained in American jurisprudence. However, a remedy is hollow if there is no party who has standing to pursue it. *See, e.g., Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 397 (1971) (recognizing a remedy not otherwise precluded to be available for redressing a violated right).

In this opinion, we determine whether an intended third-party beneficiary to a trust, the daughter of a deceased settlor, has standing to sue the settlor's attorney for legal malpractice. Before his death, the settlor hired an attorney to prepare the necessary trust documents to enable the settlor to distribute a greater portion of the trust's assets to his daughter upon his death than was available under the most recent version of the trust. The attorney's alleged negligence in preparing these documents resulted in the assets being distributed in accordance with the most recent trust, thereby depriving his daughter of certain trust assets and causing her injury.

In this appeal, we are asked to resolve whether the daughter, as an intended third-party beneficiary, may sue the settlor's attorney for legal malpractice to seek compensation for having not received the share of trust assets that the settlor intended, or, alternatively, if she is left without a remedy. Because we conclude that there are circumstances where a third-party beneficiary may have standing to file suit against a settlor's attorney for legal malpractice in a transactional matter, the district court erred in dismissing the complaint for lack of standing as a matter of law. In reaching our decision, we adopt the balancing test articulated in *Lucas v. Hamm*, 364 P.2d 685, 687-88 (Cal. 1961), as this test provides a remedy for third-party

beneficiaries while still protecting the legal profession from unforeseen liability in transactional matters. We also note that, consistent with *Nelson v. Burr*, 138 Nev. 847, 851, 521 P.3d 1207, 1210-11 (2022) (distinguishing when transactional and litigation malpractice claims accrue), transactional legal malpractice claims are ripe once the plaintiff incurs costs litigating the validity or meaning of the challenged documents. In this case, the claim was ripe when Bernstein was forced to litigate the validity of the settlor's trust documents. Thus, the district court likewise erred in dismissing the underlying complaint on ripeness grounds.

## FACTS AND PROCEDURAL HISTORY

Appellant Christine Meleo Bernstein and nonparty Darin Meleo are the children of Anthony and Sharon Meleo and beneficiaries of the Meleo Family Trust, which was established by Anthony and Sharon as co-settlors.[1] On May 21, 2020, Sharon died and the trust, by its terms, could no longer be "revoked, altered, amended, or terminated." However, a "power of appointment"[2] could be exercised by the surviving spouse, as the settlor,

---

[1]Because this case was dismissed on an NRCP 12(b)(5) motion to dismiss, neither the primary trust documents nor the purportedly deficient amendments were included in the record before us. Therefore, we rely on the factual allegations articulated in Bernstein's complaint—which must be accepted as true in reviewing an NRCP 12(b)(5) dismissal on appeal, *see Buzz Stew, LLC v. City of North Las Vegas*, 124 Nev. 224, 228, 181 P.3d 670, 672 (2008)—and the findings of fact from the related trust proceedings in the district court for our recitation of the facts herein.

[2]As set forth in NRS 162B.075, a power of appointment is "a power that enables a powerholder acting in a nonfiduciary capacity to designate a recipient of an ownership interest in or another power of appointment over the appointive property."

to alter the distribution of trust assets, if the intent to exercise such power was clearly expressed.[3]

Anthony, as surviving spouse and settlor, hired respondent Shawn L. Morris and his law firm, respondent Shawn L. Morris, Ltd. (collectively Morris), to alter the distribution of trust assets to favor Bernstein over Darin. Morris drafted two amendments to the Meleo Family Trust, which purported to execute Anthony's intention of changing the distribution of trust assets to favor Bernstein. Bernstein alleges that this was because Anthony had already given significant funds to Darin during his lifetime and because of Darin's alleged personal issues. Following Anthony's death, Darin challenged the validity of the trust amendments prepared by Morris in district court, arguing that he should receive his share of the trust assets as intended by the most recent trust because the amendments reallocating trust assets were invalid.

During the trust proceedings, the district court found that the amendments were invalid because they did not expressly reference Anthony's power of appointment in order to change the distribution of trust assets. *See* NRS 162B.300 (establishing requirements for exercising powers of appointment). Further, insofar as the documents were framed as

---

[3]A settlor is one who sets up a trust. *See Settlor, Black's Law Dictionary* (11th ed. 2019). A trustee is "one who holds trust property and who is subject to the equitable duties to deal with it for the benefit of another." 76 Am. Jur. 2d *Trusts* § 52 (2016). Relatedly, "[a] fiduciary relation exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation." *In re Frei Irrevocable Tr. Dated Oct. 29, 1996*, 133 Nev. 50, 58, 390 P.3d 646, 653 (2017) (internal quotation marks omitted). For the purposes of NRS Chapter 162, the term "'[f]iduciary' includes a trustee under any trust." NRS 162.020.



amendments to the trust itself, the court found that, because the trust became irrevocable upon Sharon's death, any such amendments were expressly prohibited. Therefore, the district court concluded that the amendments were ineffective, and Bernstein would only receive her share of assets under the most recent trust.

Following the district court's order invalidating the amendments, Bernstein sued Morris for legal malpractice. In Bernstein's complaint, she alleged that Morris was hired by Anthony for the purpose of transferring certain trust assets for her benefit and that Morris negligently prepared documents to accomplish this, causing her injury by reducing her share of trust assets contrary to Anthony's intentions. To redress this injury, she requested monetary damages based on her reduced share of trust assets, "costs of the suit incurred," and such other relief as appropriate.

Morris then moved to dismiss the complaint under NRCP 12(b)(5), arguing that an attorney-client relationship is a necessary condition for any legal malpractice claim, and there was no such relationship between himself and Bernstein. Furthermore, Morris argued that the case was not ripe because damages would not be known until the final resolution of the underlying trust proceedings.

Bernstein opposed the motion, arguing that she had standing to sue Morris for legal malpractice for drafting the invalid trust documents because, as a third-party beneficiary of the trust, she was the intended beneficiary of Anthony's decision to redistribute the trust assets. She maintained that Nevada law does not preclude third-party standing in this situation and argued that the district court should have applied the *Lucas* test from California to find that she had standing as a third-party

beneficiary to pursue her legal malpractice complaint against Morris. Additionally, Bernstein argued that the case was ripe, as *Nelson*, 138 Nev. at 851, 521 P.3d at 1211, holds that transactional malpractice claims are ripe once some costs are incurred litigating the validity of the challenged documents. Morris, in turn, argued that there was no privity of contract between himself and Bernstein for her to bring a legal malpractice claim against him and that Bernstein's damages were unknown as the trust proceedings had not yet concluded, and therefore, any alleged claim was premature. The district court agreed with Morris on both points and dismissed Bernstein's complaint. Bernstein now appeals.

## ANALYSIS

A district court's order granting a motion to dismiss for "failure to state a claim upon which relief can be granted" is rigorously reviewed on appeal. NRCP 12(b)(5); *Buzz Stew, LLC v. City of North Las Vegas*, 124 Nev. 224, 227-28, 181 P.3d 670, 672 (2008). In reviewing such an order, we assume that all facts alleged in plaintiff's complaint are true, and we review the district court's legal conclusions de novo. *Buzz Stew*, 124 Nev. at 228, 181 P.3d at 672. This court reviews the dismissal of a complaint for lack of standing under the same rigorous, de novo standard as dismissal for failure to state a claim. *See Citizens for Cold Springs v. City of Reno*, 125 Nev. 625, 629, 218 P.3d 847, 850 (2009); *see also Shoen v. SAC Holding Corp.*, 122 Nev. 621, 634, 137 P.3d 1171, 1180 (2006) (observing that when a plaintiff lacks standing, it is appropriate to dismiss the complaint for failure to state a claim upon which relief may be granted), *abrogated on other grounds by Guzman v. Johnson*, 137 Nev. 126, 483 P.3d 531 (2021).

For the reasons explained herein, we conclude that the district court erred in dismissing Bernstein's complaint pursuant to NRCP 12(b)(5). In particular, the court erred as a matter of law in concluding that

Bernstein, as a third-party beneficiary of the trust, lacked standing to bring a legal malpractice claim against Morris. The district court further erred in determining that Bernstein's legal malpractice claim was not ripe.

*Third-party beneficiaries may have standing to bring a legal malpractice claim*

On appeal, Bernstein first argues that an intended third-party beneficiary of an attorney-client relationship has standing to sue for legal malpractice that occurred within that relationship. To support this contention, Bernstein points to California authority that allows third-party beneficiaries to sue when the third party's harm is sufficiently foreseeable and such a suit would not create an undue burden on the profession. *See Lucas*, 364 P.2d at 687-88 (adopting a balancing test to determine when a third-party beneficiary has standing to sue for legal malpractice). Morris counters that *Canarelli v. Eighth Judicial District Court*, 136 Nev. 247, 255, 464 P.3d 114, 122 (2020), precludes third-party beneficiary standing to bring legal malpractice claims. In that case, our supreme court—relying on NRS 162.310(1)[4]—held that "an attorney representing a trustee as a fiduciary does not result in an attorney-client relationship between the attorney and the beneficiary," for the purpose of establishing attorney-client privilege. *Canarelli*, 136 Nev. at 255, 464 P.3d at 122. Bernstein's appeal requires us to determine the extent of third-party beneficiary standing in

---

[4]NRS 162.310(1) provides that "[a]n attorney who represents a fiduciary does not, solely as a result of such attorney-client relationship, assume a corresponding duty of care or other fiduciary duty to a principal."

estate planning malpractice claims, which is a novel issue in Nevada and was not addressed in *Canarelli*.[5]

To prevail on a legal malpractice action, a plaintiff must generally show "the existence of an attorney-client relationship, the existence of a duty on the part of a lawyer, failure to perform the duty, and the negligence of the lawyer [as a] proximate cause of damage to the client." *Warmbrodt v. Blanchard*, 100 Nev. 703, 706-07, 692 P.2d 1282, 1285 (1984) (internal quotation marks omitted), *superseded by statute on other grounds as stated in Countrywide Home Loans, Inc. v. Thitchener*, 124 Nev. 725, 740-43 & n.39, 192 P.3d 243, 253-55 & n.39 (2008); *Nat'l Sav. Bank of D.C. v. Ward*, 100 U.S. 195, 200 (1879) (holding that "the general rule is that the obligation of the attorney is to his client and not to a third party," but noting that circumstances may merit otherwise).

Morris essentially argues that all the *Warmbrodt* elements must be satisfied to impose liability against him. And because he was not in an attorney-client relationship with Bernstein, the first *Warmbrodt* element fails and liability cannot be imposed. He further contends that *Canarelli* stands for the broad proposition that no attorney-client relationship is formed between an attorney and a third-party beneficiary and that, absent such a relationship, there can be no liability. As a result, Morris argues Bernstein does not have standing to bring a legal malpractice claim against him. We disagree.

---

[5]Although *Charleson v. Hardesty*, 108 Nev. 878, 883-84, 839 P.2d 1303, 1307-08 (1992), *superseded in part by statute as stated in Canarelli*, 136 Nev. at 255 n.3, 464 P.3d at 122 n.3, involved, among other things, an issue of third-party beneficiaries suing for negligent drafting of testamentary documents, in that case this issue was resolved on statute-of-limitations grounds, thereby leaving the standing question unresolved.

*Canarelli*, citing to NRS 162.310(1), states that "an attorney representing a trustee as a fiduciary does not result in an attorney-client relationship between the attorney and the beneficiary." 136 Nev. at 255, 464 P.3d at 122. But *Canarelli* and NRS 162.310(1) only apply where an attorney is hired to represent a trustee in a fiduciary capacity. *Id.* Therefore, *Canarelli* does not resolve the question presented here—whether an attorney hired by the settlor to draft a trust instrument to reallocate trust assets to a trust beneficiary owes a duty of care to that beneficiary for whose benefit the settlor has decided to change the allocation of trust assets.

As NRS 162B.075 recognizes, a power of appointment is "a power that enables a powerholder acting in a *nonfiduciary* capacity to designate a recipient of an ownership interest in or another power of appointment over the appointive property." (Emphasis added.) Thus, by statute, to the extent Anthony utilized the power of appointment to attempt to change the distribution of trust assets through the documents that he hired Morris to draft, this exercise of power could only be done in a nonfiduciary capacity.[6] As a result, the fiduciary-based protections provided by *Canarelli* and NRS 162.310(1) are inapplicable here.

In the absence of controlling authority, Bernstein urges us to adopt the *Lucas* balancing test articulated by the California Supreme Court. She argues that, under *Lucas*, as an intended third-party beneficiary of the

---

[6]The limited record before the court indicates that, at the time Anthony sought to utilize the power of appointment to redistribute the trust assets through the documents Morris was hired to draft, Anthony was both the settlor of the trust and the trustee. Anthony's actions of changing the distribution of assets in the trust were that of a settlor. *See, e.g., In re William J. Raggio Fam. Tr.*, 136 Nev. 172, 177, 460 P.3d 969, 974 (2020) (looking to the settlor's intent—as reflected by the trust instruments—to determine the obligations of a trustee).

(O) 1947B

trust, she has standing to bring a legal malpractice claim against Morris for his negligent drafting of the trust instruments. Bernstein maintains that, without standing to pursue this action, there is no remedy available for the injury she incurred due to Morris's malpractice. She further asserts that adopting a contrary approach would mean that "estate planners are completely insulated from their own malpractice because their clients are no longer living when the effects of the malpractice are felt and no one has standing to sue them." Morris, on the other hand, neither substantively addresses the authorities Bernstein cites in support of adopting the *Lucas* balancing test nor the test itself and instead argues that, without privity of contract between the plaintiff and the attorney, there can be no standing to bring a legal malpractice claim. We consider both positions below.

In *Lucas*, the California Supreme Court considered an appeal from the dismissal of a legal malpractice action brought by will beneficiaries against the attorney who drafted the will. 364 P.2d at 686. The *Lucas* court held that an attorney may be liable for legal malpractice based on a claim brought by a third-party beneficiary plaintiff who lacks privity of contract with the attorney. *Id.* at 688 (providing that the lack of privity did "not preclude [the beneficiaries] from maintaining an action in tort against [the attorney-drafter]"). The court provided several factors to consider when determining whether such liability exists: "the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to [them], the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury, . . . the policy of preventing future harm," and "whether the recognition of liability . . . would impose an undue burden on the profession." *Id.* at 687-88; *see also Hartford Accident & Indem. Co. v.*

10

*Rogers*, 96 Nev. 576, 580, 613 P.2d 1025, 1027 (1980) (favorably citing *Lucas* in holding that an attorney was not liable to a party opponent for malpractice). In adopting this test, the court emphasized that taking a contrary approach would result in the beneficiary bearing the loss caused by the attorney's malpractice without any recourse. *Lucas*, 364 P.2d at 688. The court noted that such a result would also impair the public policy goal of preventing future harm. *Id.*

Subsequently, in *Heyer v. Flaig*, 449 P.2d 161, 164-65 (Cal. 1969), *disapproved of on other grounds in Laird v. Blacker*, 828 P.2d 691 (Cal. 1992), the California Supreme Court held that an attorney undertaking to fulfill the testamentary instructions of their client necessarily assumes a relationship with the client's beneficiaries, and therefore, "the possibility of injury to an intended beneficiary" is foreseeable. *Id.* After determining that the potential for injury was foreseeable in such circumstances, the *Heyer* court concluded that the attorney was liable to the beneficiaries of a will for negligence in drafting a will that failed to defeat the inheritance rights of the testator's husband in favor of certain beneficiaries as the testator intended. *Id.* at 165.

While *Lucas* and *Heyer* involved legal malpractice in the drafting of wills, California courts have since extended the rule articulated in those decisions to cases involving negligence in the drafting of trust instruments. *See, e.g., Bucquet v. Livingston*, 129 Cal. Rptr. 514, 519 (Ct. App. 1976) (concluding that the principles set forth in *Lucas* and *Heyer* are "equally applicable to inter vivos trusts . . . as there is no rational basis for any distinction"). The California balancing test has subsequently been adopted by other jurisdictions, which have concluded that public policy favors allowing suits that will manifest the testator's intent, prevent the

(O) 1947B

innocent beneficiary from bearing the cost of attorney malpractice, and encourage greater care on the part of estate planning attorneys. *See, e.g.,* *Auric v. Cont'l Gas Co.,* 331 N.W.2d 325, 328-29 (Wis. 1983) (adopting the California balancing test); *Pizel v. Zuspann,* 795 P.2d 42, 49-50 (Kan. 1990) (same).

We recognize that some jurisdictions require strict privity of contract between the plaintiff and attorney for a legal malpractice claim and thus do not allow third-party beneficiary standing under the circumstances presented here. *See, e.g., Baker v. Wood, Ris & Hames, P.C.,* 364 P.3d 872, 878 (Colo. 2016) (finding the beneficiaries of a testator's estate-planning documents lacked standing in a legal malpractice case against the documents' drafter); *Est. of Schneider v. Finmann,* 933 N.E.2d 718, 720-21 (N.Y. 2010) (holding that only the client and the client's estate may sue a drafter of testamentary documents for legal malpractice). While the district court did not rely on this line of cases in resolving the underlying matter, it essentially applied this approach in dismissing Bernstein's complaint. And on appeal, Morris essentially advocates for the adoption of this approach, although he too does not cite cases applying the strict privity approach.

Having considered the rationale in support of both the California balancing test and the privity-of-contract approach, we agree with Bernstein that the balancing test adopted by the *Lucas* court is the better-reasoned approach.[7] Courts adhering to the privity-of-contract

---

[7]Some jurisdictions have allowed standing in similar contexts based on an intended third-party beneficiary suing for breach of contract between the attorney and client, when it can be shown that the parties clearly contracted to draft a document that would benefit the third party. *See, e.g., Guy v. Liederbach,* 459 A.2d 744, 750-52 (Pa. 1983) (adopting the contract theory to permit standing for a named third-party beneficiary of a will that

(0) 1947B

approach primarily rely on concerns that an expansion of liability to third-party beneficiaries could invite unpredictable liability and undermine the attorney's undivided loyalty to their client. *See, e.g., Baker*, 364 P.3d at 877. But as the *Heyer* court recognized, the remedy provided by the California balancing test is decidedly limited: through it, attorneys are only liable to foreseeable plaintiffs as informed by the nature of the transaction. *Heyer*, 449 P.2d at 164-65. And the California approach further prioritizes the objectives of the attorney-client relationship and only allows claims that enforce the obligations of that relationship. *Cf. Moore v. Anderson Zeigler Disharoon Gallagher & Gray*, 135 Cal. Rptr. 2d 888, 896 (Ct. App. 2003) (dismissing a legal malpractice claim by third-party beneficiaries that challenged the intent of the testator, rather than the attorney's manifestation of that intent in preparing estate planning documents).

Overall, the *Lucas* test better serves the client by ensuring that the client's intentions are fulfilled where the client's estate would be unable to effectively pursue its claim against the attorney. Notably, when the distribution of trust assets does not match a settlor's expressed intentions, the overall value of the trust is not affected, and thus, "the estate is not injured by such negligence, except to the extent of fees paid." *See Bucquet*, 129 Cal. Rptr. at 521 (noting that when testamentary assets are misdirected due to malpractice in the drafting of the trust instruments, the estate could

---

was negligently drafted); *Thorsen v. Richmond Soc'y for the Prevention of Cruelty to Animals*, 786 S.E.2d 453, 460 (Va. 2016) (permitting standing for third parties when the attorney-client contract is clearly and definitely intended to confer a benefit upon them). However, as the California Supreme Court has recognized, given the availability of the tort-based remedy articulated in *Lucas*, the contractual theory of recovery "is conceptually superfluous since the crux of the action must lie in tort in any case; there can be no recovery without negligence." *Heyer*, 449 P.2d at 164.

only recover the amount of attorney fees paid, while "the beneficiaries suffer the real loss"). Indeed, "[u]nless the beneficiaries can recover against the attorney, no one could do so and the social policy of preventing future harm would be frustrated." *Id.* Furthermore, permitting a third-party beneficiary who is allegedly damaged as a result of the distribution standing to sue encourages greater care on the part of estate planning attorneys. *See, e.g., Auric,* 331 N.W.2d at 329 ("Allowing a will beneficiary to maintain a suit against an attorney who negligently drafts or supervises the execution of a will is one way to make an attorney accountable for his negligence."). And critically—absent standing for intended third-party beneficiaries to sue when an attorney's negligence in drafting trust instruments results in the loss of an intended inheritance—the beneficiary would be without any recourse to recover the damages caused by the attorney's negligence.

Having determined that the *Lucas* balancing test provides the best-reasoned approach to addressing third-party beneficiary standing to bring a legal malpractice action, we must now examine the propriety of the district court's dismissal of Bernstein's complaint in light of that approach. Here, Bernstein's complaint alleged that "Anthony hired [Morris] to act as his legal counsel" to "leave a larger share of his estate to [Bernstein]," asserting that this was "the entire purpose for which [a]ttorney Morris was hired." Taking the allegations in Bernstein's complaint as true, as required, Bernstein has alleged sufficient facts that, if proven, could support the conclusion that Anthony intended to benefit Bernstein by hiring Morris to prepare the required documents for Anthony, as the settlor exercising his power of appointment, to transfer additional trust assets to Bernstein.

Bernstein further alleged that Morris failed to properly exercise Anthony's power of appointment and instead improperly drafted documents

purporting to amend the trust—which could no longer be amended after Sharon's death—resulting in the invalidation of the amendments in the trust proceedings. As a result, Bernstein alleged she was deprived of certain trust assets that Anthony intended her to receive, causing her injury. Applying the remaining *Lucas* balancing test factors, we conclude that Bernstein's complaint sufficiently pleaded facts that, if true, would enable her to pursue a legal malpractice claim against Morris. Specifically, her allegations support that she suffered foreseeable harm, established a degree of certainty that Bernstein suffered injury (receiving fewer trust assets), and demonstrated a close connection between Morris's conduct and that injury. Finally, as Bernstein argues, without the availability of a legal malpractice claim for a third-party beneficiary, she would lack standing to sue Morris for her injury arising from his alleged legal malpractice. In this circumstance, there would be no available legal recourse to ensure that Anthony's intentions to redistribute trust assets to Bernstein were honored.

In summary, applying the *Lucas* balancing test to the allegations set forth in Bernstein's complaint, and accepting her allegations as true, we cannot conclude that she "could prove no set of facts, which, if true, would entitle [her] to relief." *Buzz Stew*, 124 Nev. at 228, 181 P.3d at 672. Therefore, we reverse the district court's dismissal of Bernstein's complaint for lack of standing under NRCP 12(b)(5).

*Transactional legal malpractice actions are ripe once costs are incurred*

Bernstein next argues that her case was ripe because the district court's adverse ruling in the trust proceedings made her aware of the existence of damages based on the alleged malpractice, even though the final amount of her damages had not yet been determined. Morris disagrees, arguing that the case is premature because, if damages are not

final, they might not materialize once the associated trust proceedings are ultimately resolved.

"As a general rule, a legal malpractice action does not accrue until the plaintiff knows, or should know, all the facts relevant to the [malpractice] elements and damage has been sustained." *Hewitt v. Allen*, 118 Nev. 216, 221, 43 P.3d 345, 347-48 (2002). In transactional malpractice cases, for which litigation is required to determine the legal meaning of drafted documents, a litigant "sustains damage by assuming the expense, inconvenience and risk of having to maintain such litigation." *Gonzales v. Stewart Title of N. Nev.*, 111 Nev. 1350, 1353-54, 905 P.2d 176, 178 (1995). Once a litigant incurs any additional costs in retaining an attorney regarding the contested documents, they can sue for transactional malpractice, "even though the amount of the damages is uncertain." *Nelson*, 138 Nev. at 851, 521 P.3d at 1211.

In *Nelson*, errors in drafting trust documents became relevant in divorce litigation years later. *Id.* at 848-49, 521 P.3d at 1209. There, our supreme court held that the statute of limitations for a transactional malpractice claim commenced once the meaning of the documents was "called into question and extensively litigated" and was not tolled until the court's final decision quantifying damages, if any. *Id.* at 852, 521 P.3d at 1212. Accordingly, the claim accrued, and the statute of limitations began when the parties commenced litigating the validity of the trust amendments prepared by Morris. *Id.*

Here, Bernstein incurred the cost of hiring an attorney to argue the validity of the trust amendments prepared by Morris. Therefore, the statute of limitations for Bernstein's malpractice claim commenced once she incurred the cost of hiring an attorney to litigate in the trust proceedings.

As such, filing this case before the trust proceedings were finally resolved was proper, notwithstanding the indeterminacy of damages from the distribution of trust assets themselves. Thus, we also reverse the district court's dismissal of Bernstein's complaint on the ground of ripeness.

## CONCLUSION

In adopting the *Lucas* balancing test, we conclude that Bernstein's claim for legal malpractice is not barred, as a matter of law, despite Bernstein lacking privity of contract with Morris. Taking all factual allegations in Bernstein's complaint as true and all inferences in her favor, we agree that Bernstein's complaint has stated sufficient facts to withstand scrutiny under NRCP 12(b)(5), and therefore, the district court erred in dismissing Bernstein's complaint under this rule. Further, Bernstein's complaint for transactional legal malpractice is ripe, as she alleged that she has incurred attorney fees and litigation costs in determining the validity of the trust documents Morris drafted. Accordingly, we reverse the district court's decision and remand this matter to the district court for further proceedings consistent with this opinion.

_____, C.J.
Bulla

We concur:

_____, J.
Gibbons

_____, J.
Westbrook